FEDERAL DEPOSIT INSURANCE
CORPORATION, etc., Plaintiff,
Appellee,

v.

URBANIZADORA ALTOMAR, INC.,
et al., Defendants, Appellants,

Robhiz, Inc., Defendant, Appellant.

FEDERAL DEPOSIT INSURANCE
CORPORATION, etc., Plaintiff,
Appellee,

v.

URBANIZADORA ALTOMAR, INC.,
et al., Defendants, Appellees,

Julio A. Amoedo, Defendant, Appellant.

Nos. 90–2055, 90–2056.

United States Court of Appeals,
First Circuit.

Heard March 6, 1991.

Decided July 24, 1991.

Russell A. Del Toro, with whom Del Toro
& Santana and Lydia Lizarríbar–Masini,
were on brief, Hato Rey, P.R., for appellant Robhiz, Inc.

Frank D. Inserni, Old San Juan, P.R., for
appellant Julio A. Amoedo.

Frank Gotay–Barquet, with whom Feldstein, Gelpí & Gotay, Old San Juan, P.R.,
Ann S. DuRoss, Asst. Gen. Counsel, Colleen S. Bombardier, S. Counsel, Beatrice
Valdez, Counsel, Federal Deposit Ins.
Corp., Washington, D.C., Rae Schupack Nathan, Regional Counsel, New York City,
Nancy Pujals, Managing Atty., were on

brief, Hato Rey, P.R., for appellee Federal Deposit Ins. Corp.

Before BREYER, Chief Judge,
TORRUELLA and SELYA, Circuit Judges.

TORRUELLA, Circuit Judge.

These are appeals from an action filed by the Federal Deposit Insurance Corporation ("FDIC") seeking to foreclose certain mortgages issued by Urbanizadora Altomar, Inc. ("Altomar"). Besides Altomar, the complaint was originally filed against Julio A. Amoedo ("Amoedo"), who had acquired title, through judicial sales, to three of the mortgaged parcels of real property owned by Altomar. The complaint was subsequently amended to include Robhiz, Inc. ("Robhiz"), which had purchased two of those mortgaged parcels from Amoedo for good and valuable consideration. Through summary judgment, the district court ordered foreclosure in the FDIC's favor of the mortgage encumbering the two parcels of real property purchased by Robhiz, and declared the judicial sale through which Amoedo acquired title to the third parcel null and void. Both Amoedo and Robhiz have appealed. We begin with the facts.

## I. FACTUAL BACKGROUND

The FDIC is the holder of a $3,100,000 mortgage note issued by Altomar on June 4, 1965.[1] Among the parcels encumbered by said mortgage were the three parcels of real property owned by Altomar which are the subject of the instant litigation and which were specifically numbered 3563, 3542, and 3423 in the Bayamón Property Registry. For simplicity's sake, we will hereinafter refer to Parcels 3563 and 3542 as Parcels A and B respectively.[2] With regard to the third parcel, Parcel 3423, on April 17, 1979, Altomar and the FDIC executed deed number 53 ("deed 53") before Notary Juan M. Méndez–Solis, whereby, among other things, the FDIC liberated Parcel 3423 from the $3,100,000 mortgage.[3] Two days later, the same parties executed deed number 55 ("deed 55"), whereby Altomar issued a $100,000 mortgage over a portion of land segregated from Parcel 3423. In the interests of clarity, we will refer to the portion of land segregated from Parcel 3423 and over which the $100,000 mortgage was constituted as Parcel C.

For a full understanding of the events that follow we must retreat to July 6, 1971, when Amoedo instituted a civil action against Altomar in the local courts of Puerto Rico seeking to collect on a debt. *See*

---

1. The $3,100,000 mortgage was originally negotiated between Altomar and the Banco Crédito y Ahorro Ponceño. On March 31, 1978, however, the Secretary of the Treasury of the Commonwealth of Puerto Rico determined that the bank was insolvent, ordered the same closed, and appointed the FDIC receiver of the bank for purposes of liquidation. The FDIC, in its corporate capacity and as authorized by 12 U.S.C. § 1823(e), purchased the obligation of Altomar to the bank.

2. Each parcel was liable for $48,000 of the mortgage. Under Puerto Rico Mortgage Law, when several properties are mortgaged at the same time by a single loan, the amount or part of the lien for which each must be liable must be specified. *See* Article 119 of the Mortgage Law of 1893, superseded by a similar provision in the Mortgage Law of 1979, P.R.Laws Ann. tit. 30, § 169.

3. Parcel 3423 had an eventful history. On June 4, 1965, Altomar purchased it pursuant to deed number 12 executed before Notary Iván Reichard, and on May 11, 1967, transferred it to the Administration of Parks and Public Recreation of Puerto Rico ("Parks") pursuant to deed num-

ber 57 executed before Notary José A. Suro. Due to an error in the deed, the Registrar recorded the transaction as the creation of a new property unit by segregation and assigned it number 14,116 in the Guaynabo Property Registry. The situation was corrected on April 17, 1979, when Altomar, the FDIC and Parks executed deed 53 whereby they clarified that Parks had been in actual, physical and peaceful possession of Parcel 3423 since 1967. Additionally, Altomar and Parks also carried out the following transaction through deed 53: Parks segregated a portion of land from Parcel 3423 (which we have referred to in the text as Parcel C) and Altomar segregated a portion of land from a parcel it owned in Guaynabo, with the two parties then exchanging title to the segregated parcels (the exchange had been authorized by the Puerto Rico Planning Board on September 7, 1977). It was thus that Altomar acquired title to Parcel C. Deed 53 was submitted, along with deed 55, to the Property Registrar for recordation on June 6, 1979, encountering an identical fate. *See* footnote 6, *infra,* and accompanying text.

*Julio A. Amoedo v. Urbanizadora Altomar, Inc.*, No. 71–3751 (806) (Superior Court of Puerto Rico, San Juan Part). To secure the execution of a future judgment in that action, on April 5, 1972, Amoedo procured and obtained attachments from the Superior Court of Puerto Rico over Parcels A, B and 3423.[4] The attachments were duly recorded in the Property Registry. After obtaining a favorable judgment on March 25, 1980, Amoedo moved to execute the same, acquiring title to Parcel 3423 through a judicial sale held on May 25, 1982 (the validity of which is being attacked by the FDIC in the instant case on grounds of deficient notice), and to Parcels A and B through a judicial sale held on September 15, 1982.[5]

After their creation, the mortgages at issue encountered somewhat dissimilar fates. With regard to the $100,000 mortgage, on June 6, 1979, Altomar presented deeds 53 and 55 to the Property Registry for recordation. The Registrar, however, refused to register until additional government documents were submitted and notified the parties of its determination on May 7, 1981. On February 3, 1983, Altomar again presented deeds number 53 and 55 to the Property Registry for recordation, along with the additional government documents the Registrar had requested. On August 25, 1983, however, the Registrar notified Altomar that the deed could not be recorded because at that time it was Amoedo who was the owner of record of Parcel C and not Altomar. An administrative appeal to the Puerto Rico Supreme Court

regarding that determination is presently pending.[6]

With regard to the $3,100,000 mortgage, on July 12, 1983, the FDIC filed mortgage foreclosure action No. 83–1664 (GG) before the United States District Court for the District of Puerto Rico. Notwithstanding the fact that Amoedo's title to Parcels A and B had already been presented to (although not yet recorded by) the Registry, the FDIC named only Altomar as a defendant. Among the allegations of the complaint was the claim that Altomar had acknowledged the existence of the debt in a deed executed on March 25, 1983, related to the sale of another of the parcels encumbered by the mortgage, and in a similar deed executed on April 13, 1984. On February 27, 1984, however, the district court dismissed the case on grounds of "judicial efficiency." Almost two years later, on February 3 and 4, 1986, an agent for Amoedo presented documents to the Registry requesting cancellation of the mortgage on grounds of prescription. The mortgage's cancellation was actually recorded on May 20, 1986.

## II. THE PROCEEDINGS BELOW

On May 21, 1986, the FDIC filed the instant mortgage foreclosure action against Altomar (the mortgagor) and Amoedo (the mortgaged parcels' owner of record). One day after the filing of the instant action, Robhiz purchased the two parcels of land from Amoedo, and was hence later included as a co-defendant in the suit.[7] After some preliminary matters,

4. Although the attachment issued at a time when Parcel 3423 belonged to the Administration of Parks and Public Recreation of Puerto Rico, *see* footnote 3, *supra*, Amoedo nevertheless asked for extensions to the attachment on July 18, 1978, and on February 21, 1981 (the latter at a time when deeds number 53 and 55 had already been presented to and were pending recordation by the Property Registrar).

5. On September 12, 1982, Parcel 3423 was transferred to Amoedo by deed of judicial sale number 11 executed before Notary Jean González-Lassus, which was immediately presented to the Property Registry for recordation. Title to Parcels A and B was presented for recordation to the Property Registry by Amoedo on September

24, 1982, with actual recordation taking place on January 23, 1984.

6. The bill for reclassification was filed by Altomar with the Property Registry on September 16, 1983, and denied by the Registrar on March 27, 1989. The administrative appeal to the Supreme Court was filed on April 27, 1989.

7. We note that the record shows that on January 31, 1986, or at short time thereafter, the FDIC communicated to attorney José L. Hidalgo, counsel and principal stockholder of Robhiz, its belief that the foreclosure action on the $3,100,000 was not time-barred and that it was requesting payment on the mortgage.

all parties moved the court for summary judgment, and the district court ruled against Amoedo and Robhiz and for the FDIC through two separate opinions and orders both dated October 5, 1990. Seeking clarity once again, we will address appellants' cases *seriatim*.

## III.  DISCUSSION

### *F.D.I.C. v. Robhiz, Inc.*, No. 90–2055

■ With regard to No. 90–2055, the district court ruled that the FDIC was entitled to judgment against Robhiz foreclosing the $3,100,000 mortgage encumbering Parcels A and B because the statute of limitations on the mortgage was tolled in 1983 by the FDIC's filing of a legal action against Altomar.[8]  It ordered the Property Registry to reinstate the $3,100,000 mortgage which had been cancelled on May 20, 1986, and to register the court's judgment foreclosing the mortgage lien and ordering the sale at public auction of the two parcels of land. For reasons that follow, the district court's judgment cannot stand.

The district court's judgment stands or falls on the enforceability of the $3,100,000 mortgage issued on June 4, 1965, and encumbering Parcels A and B.  The Puerto Rico Mortgage Law provides that a "mortgage action prescribes twenty years from the date it could have been brought in accordance with the recorded title." P.R.Laws Ann. tit. 30, § 2576. *See also* P.R.Laws Ann. tit. 31, § 5294 and *Baldrich v. Registrar*, 86 P.R.R. 40, 48 (1962).  An action to foreclose said mortgage would therefore have been time-barred by June 4, 1985, as all parties to this appeal agree.  It is clear, then, that for the May 21, 1986, filing of the instant mortgage foreclosure action to have been timely, one or more valid tolling acts must have occurred in the interim.  Under Article 1873 of the Puerto Rico Civil Code, P.R.Laws tit. 31, § 5303, prescription of actions is interrupted in any of the following three ways: (1) by their institution before the courts; (2) by an extrajudicial claim of the creditor; and (3) by an act of acknowledgment of the debt by the debtor.  *See Rodríguez–Narváez v. Nazario*, 895 F.2d 38, 44 (1st Cir. 1990).  The FDIC points to a number of events which it claims suspended the running of the statute, to wit, its July 12, 1983, filing of a mortgage foreclosure action against Altomar in the federal court and the alleged acknowledgment of the mortgage obligation made by Altomar in two deeds it executed in 1983 and 1984.  We examine them in turn.

■ The filing of a mortgage foreclosure action in 1983 did not toll the statute of limitations that was running in favor of the owner of the property (Amoedo), or his successor in interest (Robhiz), for the simple reason that the complaint was filed solely against the mortgagor (Altomar) and did not name the person holding title to the property at the time as a defendant in the suit.  In order for the filing of a lawsuit to have a tolling effect, the law dictates that the suit must be directed against the person in whose favor the limitations statute is running.  *See Annoni v. Heirs of Nadal*, 59 P.R.R. 638, 644 (1941) (the filing of a complaint does not stop the running of the limitations period applicable to the action as to persons not made defendants in the suit); *Bithorn v. Santana*, 68 P.R.R. 281, 285 (1948) (for limitation purposes, the date when a defendant is sued is inexorably fixed by the date he is first joined as a defendant—absent joint and several liability); *Figueroa–Díaz v. Escobales*, 101 D.P.R. 173, 175 (1973) (same).  This norm comports with the rationale underlying the doctrine of "extinctive prescription."  If the objective behind the statutory limitation of actions under Puerto Rico Law is to protect the stability and certainty of property rights, *Rodríguez–Narváez*, 895 F.2d at 43 n. 7, then it follows that a person who has acquired property rights to a parcel subject to a preexisting mortgage must be

---

8.  The district court also ruled that Robhiz was not a bona-fide third-party purchaser because at the time of purchase the corporation had due notice that the FDIC had claimed payment on the mortgage.  Given the grounds on which we base our decision today, we need not address the lower court's conclusion regarding Robhiz' qualifications as a bona-fide third party purchaser.

notified of an event that tolls the statute of limitations running against the mortgage in order for that event to have any tolling effect with regard to that person. The FDIC's failure to include the owner of the mortgaged property as a defendant in the suit thus defeated any tolling effect that the filing of the suit might have had with regard to the owner.

The FDIC's answers to this line of reasoning actually cut against its position. First, the FDIC submits that a foreclosure action is an action directed exclusively against the mortgaged property and not a personal action against the owner of the property; thus, it argues, in moving for foreclosure, it had no obligation to give notice to all those subsequently acquiring rights over the property. Under the laws of Puerto Rico, however, actions to execute a mortgaged credit are divided into three categories: the summary proceeding established by the Puerto Rico Mortgage Law, P.R.Laws Ann. tit. 30, § 2701 *et seq.*, which is an action *in rem*; the ordinary civil action for foreclosure of the mortgage, which displays mixed elements of both *in personam* and *in rem* actions; and the ordinary civil action for collection of the debt, which is instituted independently of the mortgage credit securing the debt. *P.R. Production Credit Assoc. v. Registrador*, 89 J.T.S. 13, 6593 (Jan. 24, 1989). Even under the summary procedure, which is exclusively *in rem*, the law requires that notice of the filing of the mortgage foreclosure action be given to the owner of the mortgaged property if different from the mortgagor. P.R.Laws Ann. tit. 30, § 2703. This being so, we believe that a foreclosure action instituted pursuant to an ordinary civil proceeding, which displays mixed elements of both *in personam* and *in rem* actions and is thus subject to traditional due process safeguards, must carry an identical condition. The FDIC's institution of an ordinary mortgage foreclosure action to collect its debt thus required that notice of the filing of the complaint be given to the new owner of the mortgaged property as well.

Secondly, the FDIC claims that because at the time of the filing of the suit on July 12, 1983, the Property Registry revealed that the only owner of record of the mortgaged parcels, and thus the juridical person in whose favor the statute of limitations was running, was in fact Altomar, not Amoedo, the FDIC had no obligation to include Amoedo as a defendant in the suit. The FDIC concedes, however, that Amoedo (who had acquired title to the parcels subjected to the $3,100,000 mortgage through a judicial sale held on September 15, 1982) had presented his title for recordation to the Property Registry on September 24, 1982. Although his title was not actually recorded until January 23, 1984 (after the filing of the FDIC's complaint), under Puerto Rico law, the date of presentation is considered the date of recordation for all intents and purposes. P.R.Laws Ann. tit. 30, § 2256; *Flores v. Arroyo*, 43 D.P.R. 282 (1932). Thus, the fact that Amoedo, and not Altomar, was the owner of Parcels A and B was a matter of public record and notice since September 24, 1982, and he therefore had to be included as a defendant in the suit.

Finally, the FDIC seeks to attribute tolling effect to the alleged acknowledgments of the debt made by Altomar in two deeds it executed in 1983 and 1984. The deeds were specifically issued on March 25, 1983, and April 13, 1984, and presumably recognized the existence of the debt Altomar owed to the FDIC, which was secured by the $3,100,000 mortgage encumbering, among others, Parcels A and B. Under the "debt acknowledgment" provision of Article 1873 of the Puerto Rico Civil Code, however, the Supreme Court of Puerto Rico has stated that the "act of acknowledgment [must] emanate from the debtor," *Widow of Carlo v. Toro*, 99 P.R.R. 196, 206 (1970) (quoting XXXII–II Scaevola, *Código Civil*, p. 943–981), and must be made with the "specific intention of acknowledging the survival of the [creditor's] right," *Díaz de Diana v. A.J.A.S. Ins. Co.*, 110 P.R.R. 602, 615 (1980) (quoting XXXII–II, Scaevola, *Código Civil*, p. 978). As we have noted above, by September 24, 1982, Amoedo had become the owner for all intents and purposes of Parcels A and B, including respon-

sibility for the mortgage. *See Teacher's Annuity & Retirement System v. Sociedad de Gananciales,* 115 D.P.R. 277 (1984) (buyer of mortgaged property assumes responsibility for the mortgage absent the mortgagee's express release); *Henares v. Casanova,* 7 D.P.R. 299 (1904) (person who acquires parcel through judicial sale is responsible for liens which pre-existed his or her credit). Thus, even assuming Altomar's acknowledgment was legally sufficient to toll the statute of limitations running against its own obligation to the FDIC, it could have no effect with regard to the lien existing over Parcels A and B. Altomar no longer had any rights over those parcels and was thus no longer the "debtor" who could lawfully acknowledge the debt. Only Amoedo, as the new owner of the parcels, could specifically manifest his intention of acknowledging the existence of the creditor's right. Hence, the FDIC's effort to find tolling significance in Altomar's alleged acknowledgment of the debt also fails.[9]

We thus conclude that the prescription period on the $3,100,000 mortgage ran uninterrupted from June 4, 1965, to June 3, 1985. The FDIC's May 21, 1986, filing of a mortgage foreclosure action against Altomar, Amoedo and Robhiz was therefore an attempt to foreclose a nonexistent mortgage and should have been dismissed. Robhiz thus validly acquired title to Parcels A and B from Amoedo, free of any mortgage lien. The district court's judgment, as well as all orders issued to the Property Registrar, are therefore *vacated.*

### F.D.I.C. v. Amoedo, No. 90–2056

■ With regard to No. 90–2056, the district court held that the FDIC was entitled to judgment against Amoedo declaring the the FDIC was entitled to judgment against Amoedo declaring the judicial sale through which Amoedo acquired title to Parcel C null and void for failure to comply with the provisions of Rule 51.8 of the Puerto Rico

Rules of Civil Procedure. It ordered the Registrar to record deeds 53 and 55 (clarifying Parks ownership of Parcel 3423 since 1967, segregating a portion of land from Parcel 3423 (Parcel C) and transferring it to Altomar, and constituting the $100,000 mortgage over Parcel C), which had previously been denied access to the Property Registry because Amoedo mistakenly appeared as the owner of record of Parcel 3423. (The court, however, did not order foreclosure of the $100,000 mortgage). Reasoning as the district court did, we reach the same conclusion, and therefore affirm.

Puerto Rico's Rule of Civil Procedure 51.8(a) lays out the notification requirements which a party seeking to execute an attachment must comply with before a judicial sale can be held. P.R.Laws Ann. tit. 32, App. III R. 51.8. In cases where the creditor knows the debtor's place of residence, the rule requires that notice of the sale be posted in the collector's office and the public school of the town in which the debtor resides. If, however, the debtor's domicile is unknown, then the rule dictates that the announcement must be published in a newspaper of general circulation once a week for at least two consecutive weeks. Additionally, the rule provides that, in all cases, notice of the sale must be posted in three public places in the town where the sale will take place, such as the city hall, the courthouse and the collector's office. *See generally C.R.U.V. v. Registrador,* 117 D.P.R. 662, 671 (1986). The Supreme Court of Puerto Rico has held that these requirements must be strictly complied with, as they are inextricably linked to the concept of due process. Failure to observe them will invariably result in the invalidation of the sale. *See Lincoln Savings Bank v. Figueroa Ramírez,* 89 J.T.S. 68, 7053 (June 26, 1989).

On appeal, Amoedo submits that he posted notice of the sale on three public places in the town where the sale was to be held and that he published an announcement of

---

**9.** Any attempt by the FDIC to attach tolling significance to the conversation which allegedly took place during or after the month of January 1986 between its officials and an agent for Rob-

hiz, *see* footnote 7, is equally unmeritorious. Whatever its exact date, this meeting took place well after the mortgage's expiration date of June 3, 1985.

the same in a newspaper of general circulation once a week for two consecutive weeks; he also concedes, however, that he did not post notice of the sale in the public school or the collector's office of the town where Altomar's principal offices were located. This concession is, in our opinion, fatal to his claim. Where, as in the instant case, the creditor knows the debtor's address, the rule clearly mandates that notice of the sale be published in the public school and the collector's office of the town where the debtor resides. In such a case, availing himself of the alternative of publishing the announcement on a newspaper of general circulation could offer the creditor no advantage. Amoedo had been litigating this and other matters with Altomar for over two decades and he therefore could not claim ignorance of Altomar's physical address. There is no evidence in the record indicating that the corporation relocated its principal offices or that their location was somehow hard to ascertain. Furthermore, his two answers to this line of reasoning are not persuasive. The fact that Altomar had not rendered annual reports to the Puerto Rico State Department since 1979 is inconsequential, since the State Department's records were not the exclusive means through which Amoedo could learn of Altomar's place of business. And, his argument that Altomar's attorneys knew of the existence of the attachment is equally meritless, since the purpose of the notice requirement is not to notify the debtor of the possibility of a future judicial sale, but to notify him or her and all prospective buyers of the actual date in which the sale is to take place. See C.R.U.V., 117 D.P.R. at 673. We therefore conclude that the district court correctly invalidated the May 25, 1982, judicial sale.

Amoedo defends the validity of the May 25, 1982, judicial sale on yet another ground. He submits that reliance on C.R.U.V., 117 D.P.R. 662, is unwarranted because that case was decided in 1986, four years after the judicial sale through which he acquired title to Parcel 3423 was held. Rather, he argues, the court should have applied Federal Land Bank v. León, 56 D.P.R. 887 (1940), which was the controlling authority at the time. In Federal Land Bank, the Supreme Court of Puerto Rico interpreted Article 251 of the Code of Civil Procedure (Rule 51.8's predecessor) and held that the notification requirement was satisfied by either posting notice of the sale in the collector's office and the public school of the debtor's place of residence, or by publishing the notice of the sale in a newspaper of general circulation. A retroactive application of the C.R.U.V. holding, Amoedo concludes, would be a violation of due process of law.

Whatever our views on the subject, Amoedo's argument was conclusively answered in Lincoln Savings Bank, 89 J.T.S. 68, 7054. There, the Supreme Court of Puerto Rico expressly held that its decision in C.R.U.V. regarding its interpretation of Rule 51.8 was to have retroactive effect. That court noted that even though the C.R.U.V. decision might not have been yet handed down by the time the judicial sale in that case was held, Rule 51.8 of the Rules of Civil Procedure of 1979, the terms of which were clear and unequivocal, was certainly in effect at the time. Moreover, citing a long line of its own precedents, the court noted that procedural norms are to be applied retroactively, absent an express legislative indication to the contrary. All these considerations are equally applicable in the case at bar. We add that the wording of Article 251 of the Code of Civil Procedure was clearly phrased in the alternative, thereby motivating the holding of Federal Land Bank. Such was never the case with regard to Rule 51.8.

■ The balance of Amoedo's arguments on appeal can be summarily discarded. Deserving some attention is the claim that the district court erred in holding that he was not a bona-fide third-party purchaser of Parcel 3423. Of course, Amoedo's judicial acquisition of Parcel 3423 from a party other than its rightful owner could have been validated if at the time the judicial sale was held he was a "bona-fide third-party purchaser" as that term is defined in Article 105, P.R.Laws Ann. tit. 30, § 2355, of the Puerto Rico Mortgage Law. Banco de Santander v. Rosario Cirino, 90 J.T.S.

105, 7960 (June 29, 1990). However, the exceptional nature of the protection afforded by Puerto Rico's recording system naturally requires strict compliance with the series of conditions outlined in Article 105. *See id.,* at 7959–60 (discussing the eleven requirements). Among these conditions is the requirement that the right must have been acquired through a valid business transaction; and, as we have shown above, the judicial sale through which he acquired title to Parcel 3423 was not valid. Hence, the district court correctly rejected Amoedo's claim under Article 105 of the Puerto Rico Mortgage Law.[10]

Thus, we conclude that the judicial sale through which Amoedo acquired title to Parcel 3423 is not valid for failure to comply with the notice requirements of Rule of Civil Procedure 51.8. This being so, the Registry's recordation of deed of judicial sale number 11 executed before Notary Jean González–Lassus on September 12, 1982, was error, and the district court correctly ordered the cancellation of the same. With the path so cleared, the Registrar must record deeds number 53 and 55, clarifying Parks' ownership of Parcel 3423 since 1967, segregating a portion of land from Parcel 3423 (Parcel C) and transferring it to Altomar, and constituting the $100,000 mortgage over Parcel C. The district court's judgment in this regard is therefore *affirmed.*

*The district court's judgment in 90–2055 is vacated and the case is remanded to the district court with instructions to dismiss. The district court's judgment in 90–2056 is affirmed.*

Costs in favor of appellants in 90–2055 and in favor of appellee in 90–2056.

---

**10.** To the extent Amoedo's remaining arguments have not been expressly addressed, they must be deemed to have been considered and rejected by the court.