Raineri v. Hills. Cty. Correct.     CV-93-118-JD  01/09/96

UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE


Bruce T. Raineri

    v.                                      Civil No. 93-118-JD

Director, Hillsborough County
Department of Corrections, et al.


O R D E R


The pro se plaintiff, Bruce Raineri, brought this action

under 42 U.S.C. §§ 1983, 1985, 1986 against the Hillsborough

County Department of Corrections, its superintendent, and various

other employees.  Before the court are the motion to dismiss of

Superintendent O'Mara (document no. 51), the motion for summary

judgment of Officers Vacca and Dyer (document no. 52), and the

motion for summary judgment of Hillsborough County, O'Mara, and

Officers Rhoades, Raymond, Sullivan, and Provost (document no.

61).


Background[1]

While awaiting sentencing on federal charges in February

1993, the plaintiff was detained at the Hillsborough County

Department of Corrections.  As a diabetic, the plaintiff received

---

[1]The court's recitation of the facts relevant to the instant
motion are either not in dispute or have been alleged by the
plaintiff.

special permission to eat fruit in his cell. However, on February 10, 1993, Rhoades told the plaintiff that he was not allowed to have food in his cell. When the plaintiff asked to speak to a sergeant, Rhoades ordered the plaintiff into his cell. The plaintiff protested, and Rhoades radioed for assistance and ordered a lockdown. The plaintiff was removed to the Restrictive Housing Unit ("RHU") and was later charged with refusing to obey staff orders to lock down, interfering with staff, possession of contraband, and disorderly conduct.

The plaintiff requested a disciplinary hearing and the assistance of an attorney. His request for an attorney was denied and he did not attend his disciplinary hearing, which was scheduled for February 14, 1993. The plaintiff was found guilty of failing to obey staff orders and of interfering with staff, and was found not guilty on the contraband charge. He was sentenced to ten days in the RHU, time served, and appealed his sentence.

While still in the RHU, the plaintiff filed a petition in New Hampshire Superior Court for a writ of habeas corpus against O'Mara and the Hillsborough County Department of Corrections, alleging that he was being held in violation of his right to due process under the New Hampshire and United States Constitutions. Specifically, he claimed that he had been denied an opportunity

2

to prepare a defense, that he was not given notice of the allegations against him, that he did not have the opportunity to call witnesses on his own behalf, that he did not have a meaningful opportunity to be heard, and that he did not receive written notification from the disciplinary board of the evidence or charges the board relied on or of the reasons for the disciplinary action.

On February 22, 1993, after the plaintiff had been released from the RHU and transferred to the maximum security unit, the Hillsborough County Superior Court conducted a hearing on the plaintiff's petition. Rhoades was the only witness to appear, and the court asked him only one question. At some point the plaintiff withdrew his prayer for relief. Nonetheless, on that date, the superior court denied the plaintiff's petition for habeas relief, stating:

> [The plaintiff] has alleged no present infringement of a protected liberty interest. The confinement in administrative segregation has terminated. The record establishes that the House of Corrections has complied with all procedures and regulations and afforded necessary due process. Under the circumstances of this case, even if the issue of solitary confinement was not moot, the protected interest claimed by the defendant does not rise to the level of a second or even third level interest as defined by the [New Hampshire] Supreme Court. . . . The petition must be denied because under all of the facts and circumstances, no protected liberty interest of the defendant has been infringed either under the State or Federal Constitutions.

3

Raineri v. O'Mara, No. 93-E-044 (N.H. Sup. Ct. Feb. 22, 1993), slip op. at 1-2 (Groff, J.). On February 23, 1993, prison authorities denied the plaintiff's appeal of the disciplinary proceeding.

On March 3, 1993, while still being housed in the maximum security unit, the plaintiff filed a second petition for a writ of habeas corpus, this time in federal court, repeating many of his earlier claims and arguing that his transfer to the maximum security unit was inappropriate for the offenses for which the plaintiff had been found guilty. Noting that the plaintiff had not named any federal employee in his petition, the court construed the petition as a civil rights complaint under 42 U.S.C. § 1983. Raineri v. Hillsborough County Dept. of Corrections, No. 93-118-JD (D.N.H. Mar. 12, 1993), slip op. at 2. In response to the magistrate judge's pretrial order, the plaintiff amended his complaint, detailing the events described above and including several allegations not related to his original assertion that he had been detained in violation of both the rules and regulations of the Hillsborough County Department of Corrections and his constitutional right to due process.

In its current form, the plaintiff's petition alleges that on March 8, 1993, he gave a manila envelope containing legal materials to a corrections officer named "Joe" for photocopying.

4

The plaintiff requested that the documents be returned to him later that day so that he could meet a filing deadline. The envelope was given to Dyer, who read and the materials and gave the envelope to Vacca. After reading the materials inside the envelope, Vacca returned and confiscated all the law books and legal materials stored in the plaintiff's cell, including two weeks worth of research and notes. Vacca purported to act pursuant to a directive issued that day prohibiting inmates in the maximum security unit from keeping law books in their cells and requiring inmates to submit requests for legal materials to the law librarian. Although Vacca returned the plaintiff's envelope without having made copies, the materials seized from the plaintiff's cell were never returned.

The plaintiff also alleges that during his confinement in the RHU and in the maximum security unit, he made several requests to attend Catholic services, all of which were denied. The plaintiff further avers that a Catholic priest, Father Croteau, told him that "he has been fighting with the administration for years about church services to no avail."

The plaintiff has been sentenced and, although still in custody, is no longer at the Hillsborough County Department of Corrections.

Discussion

I.  Defendants' Motion for Summary Judgment

The role of summary judgment is "to pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether trial is actually required." Snow v. Harnischfeger Corp., 12 F.3d 1154, 1157 (1st Cir. 1993) (quoting Wynne v. Tufts Univ. Sch. of Medicine, 976 F.2d 791, 794 (1st Cir. 1992), cert. denied, 113 S. Ct. 1845 (1993)), cert. denied, 115 S. Ct. 56 (1994). The court may only grant a motion for summary judgment where the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party seeking summary judgment bears the initial burden of establishing the lack of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Quintero de Quintero v. Aponte-Roque, 974 F.2d 226, 227-28 (1st Cir. 1992). The court must view the entire record in the light most favorable to the plaintiff, "`indulging all reasonable inferences in that party's favor.'" Mesnick v. General Elec. Co., 950 F.2d 816, 822 (1st Cir. 1991) (quoting Griggs-Ryan v. Smith, 904 F.2d 112, 115 (1st Cir. 1990)), cert. denied, 504 U.S. 985 (1992). However, once

6

the defendant has submitted a properly supported motion for summary judgment, the plaintiff "may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986) (citing Fed. R. Civ. P. 56(e)).

### A. Plaintiff's Procedural Due Process Claims

Defendants Hillsborough County, O'Mara, Rhoades, Raymond, Sullivan, and Provost assert that principles of issue preclusion and claim preclusion require the court to enter summary judgment on the plaintiff's due process claim arising from his disciplinary hearing. The defendants argue that the issues upon which the plaintiff's claim is based were or could have been fully and fairly litigated in the plaintiff's habeas corpus proceedings in state court.

The full faith and credit statute provides that the "judicial proceedings of any court of any . . . State . . . shall have the same full faith and credit in every court within the United States . . . as they have by law or usage in the courts of such State." 28 U.S.C.A. § 1738 (West 1994). The statute requires federal courts to give the "same preclusive effect to state court judgments that those judgements would be given in the

7

courts of the State from which the judgments emerged." <u>Kremer v. Chemical Const. Corp.</u>, 456 U.S. 461, 466 (1982). Accordingly, the court applies New Hampshire law to determine whether the plaintiff's lawsuit is precluded by his prior state court litigation.

### 1. Issue Preclusion

Issue preclusion, also known as collateral estoppel, may be asserted where the issue subject to estoppel is identical in both actions; the finding on the issue is essential to the first judgment; the party to be estopped appeared in the first action or is in privity with someone who did; the party to be estopped had a full and fair opportunity to litigate the issue; and the first action was decided finally on the merits. <u>Day v. New Hampshire Retirement Sys.</u>, 138 N.H. 120, 123, 635 A.2d 493, 495 (1993) (citing <u>Restatement (Second) of Judgments</u> § 27 (1980)); <u>see also</u> <u>Simpson v. Calivas</u>, 139 N.H. 1, 7, 650 A.2d 318, 322 (1994). The New Hampshire Supreme Court has not determined whether or to what extent an alternative finding may be deemed sufficiently essential to a judgment to preclude further litigation of the issue. According to the Restatement, a finding on an issue is not essential to a decision by a court of first instance if the decision rests on alternative findings, any or

8

either of which would be sufficient to support the decision standing alone. Restatement (Second) of Judgments § 27, cmt. i (1980). A less restrictive approach endorses a presumption that estoppel is warranted on findings that serve as alternative grounds for a judgment. 1B Moore's Federal Practice ¶ 0.443 [5.-2], at 594 (2d ed. 1995); see also Comair Rotron, Inc.. v. Nippon Densan Corp., 49 F.3d 1535, 1537 (Fed. Cir. 1995) (noting that some courts have looked to the facts of each case to determine whether estoppel is consistent with justice, expediency, and the public interest).

The defendants' claim that the due process element of the superior court's order was necessary to its judgment fails under either interpretation of collateral estoppel. The state court's finding that the plaintiff's habeas petition was moot, although not necessarily jurisdictional in nature, cf. Carafas v. LaVallee, 391 U.S. 234, 237-41 (1968) (federal court has subject-matter jurisdiction over federal habeas petition even though petitioner was released while case was on appeal; case was not moot because of collateral consequences of petitioner's conviction), casts doubt on the reliability of its substantive findings. Cf. Gobin v. Hancock, 96 N.H. 450, 451, 78 A.2d 531, 531 (1951) (determination of petitioner's right to habeas relief filed after his release from custody would be "unnecessary and

9

would serve no useful purpose").  The dearth of testimony at the habeas hearing about the plaintiff's disciplinary hearing reenforces this concern.  Accordingly, the court finds that the superior court's conclusion regarding the plaintiff's due process rights was not essential to its judgment, and denies the defendants' motion for summary judgment on the ground of issue preclusion.

B.  Claim Preclusion

The defendants contend that even if the plaintiff's due process claim was not fully and fairly litigated in state court, the plaintiff is barred from advancing his § 1983 claim in federal court because his civil rights claim, which arises from the same transaction as the original habeas petition, could have been litigated along with his original habeas petition in state court.

Claim preclusion, or res judicata, "precludes the litigation in a later case of matters actually litigated, and matters that could have been litigated, in an earlier action between the same parties for the same cause of action."  In Re Alfred P., 126 N.H. 628, 629, 495 A.2d 1264, 1265 (1985); see also Marston v. Unites States Fidelity & Guar. Co., 135 N.H. 706, 710, 609 A.2d 745, 747 (1992) (res judicata requires a final judgment by court of

10

competent jurisdiction).  The term "cause of action" refers "to all theories on which relief could be claimed on the basis of the factual transaction in question."  Eastern Marine Constr. Corp. v. First S. Leasing, 129 N.H. 270, 275, 525 A.2d 709, 712 (1987).

The expedited nature of the plaintiff's request for habeas relief in state court, as well as the brevity of his hearing, raises the serious question of whether the plaintiff realistically could have advanced a § 1983 claim alongside his habeas claim in state court.  Cf. Rhodes v. Hannigan, 12 F.3d 989, 992 (10th Cir. 1993) ("Requiring that a prisoner join his § 1983 claim with his habeas petition or be forever barred will undermine the policy of providing a prompt habeas remedy by causing undue delay and unnecessarily expanding the scope of the habeas action.").  Although the court notes that the inclusion of a § 1983 count in the plaintiff's original petition for habeas relief would have resolved the mootness and jurisdictional questions concerning the prior habeas proceedings, it declines to penalize the plaintiff for failing to bring his civil rights

complaint earlier.[2]  As a result, the defendants' motion for summary judgment on the ground of claim preclusion is denied.


B.   Confiscation of Legal Materials

Defendants Vacca and Dyer argue that they are entitled to summary judgment on the plaintiff's claim arising from the confiscation of his legal materials on the ground of qualified immunity.  Dyer also argues that his act of contacting Vacca, absent evidence of participation in a conspiracy to deprive the plaintiff of his rights, is inadequate to state a cause of action against him, and, in the alternative, is insulated by qualified immunity.

A government official exercising discretionary authority is entitled to qualified immunity in respect to § 1983 claims only if his or her conduct does not violate "clearly established" statutory or constitutional rights.  Quintero de Quintero, 974 F.2d at 928 (citing Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).  To be "clearly established," the contours of the right must be sufficiently clear so that a reasonable official would

_____

[2]In connection with the defendants' claim preclusion and issue preclusion theories, the court also notes that the plaintiff's claim in this court commenced as a petition for habeas relief, which would not have been barred by the prior proceedings, and was subsequently construed as a civil rights complaint.

understand what he is doing violates that right.  Id. (citing Anderson v. Creighton, 483 U.S. 635, 640 (1987)).  When deciding if a defendant is entitled to qualified immunity, the court does not consider whether a defendant actually violated a plaintiff's constitutional rights.  The court focuses only on whether the defendant's behavior was "objectively reasonable, as a matter of federal law," at the time and under the circumstances of the action at issue.  See id.; see also Amsden v. Moran, 904 F.2d 748, 751 (1st Cir. 1990), cert. denied, 111 S. Ct. 713 (1991).[3]

An inmate's right of access to the courts, as guaranteed through Bounds v. Smith, 430 U.S. 817, 821 (1977), can be violated when prisoners are denied access to their legal materials.  Sowell v. Vose, 941 F.2d 32, 33 (1st Cir. 1991) (per curiam); see also Simmons v. Dickhaut, 804 F.2d 182, 183 (1st Cir. 1986) ("Many courts have found a cause of action for violation of the right of access stated where it was alleged that prison officials confiscated and/or destroyed legal materials or papers.").  Although mere conditional restrictions on an inmate's

---

[3]The objective legal reasonableness standard eliminates from the court's consideration allegations about government officials' subjective state of mind, such as bad faith or malicious intent. Floyd v. Farrell, 765 F.2d 1, 4 (1985).  In addition, the objective legal reasonableness of government officials' conduct is not measured against the defendants' actual knowledge of the constitutional standards and the probable constitutionality of their actions, but rather against a relatively uniform level of "presumptive knowledge" of constitutional standards.  Id. at 4-5.

13

access to a law library or legal materials requires a showing of legal prejudice, an absolute denial of access to legal materials is inherently prejudicial to an inmate's right of access to the courts. Sowell, 941 F.2d at 35.

The court finds that these principles were sufficiently "clearly established" at the time the plaintiff's materials were confiscated to preclude a qualified immunity defense. Accord Bryant v. Muth, 994 F.2d 1082, 1087 (4th Cir.) ("no question" that prison officials who confiscate legally prepared and retained legal materials cannot assert qualified immunity defense), cert. denied, 114 S. Ct. 559 (1993); Crowder v. Lash, 687 F.2d 996, 1007 (7th Cir. 1982). Regardless of whether the plaintiff suffered any actual prejudice or is required to demonstrate such prejudice under Sowell, a reasonable corrections official can be charged with the knowledge that the outright confiscation of any portion of an inmate's personal legal materials violates the inmate's constitutional rights. Accordingly, the defendants' joint motion for summary judgment on the ground of qualified immunity is denied.[4]

_____

[4]The court does reach Dyer's assertion that the mere act of contacting Vacca is not actionable either as a matter of law or because of Dyer's qualified immunity. The defendant has not offered any evidence to rebut the plaintiff's allegation that Dyer not only contacted Vacca, but also conspired with Vacca to confiscate the plaintiff's legal materials.

14

II.  Defendant's Motion to Dismiss

Defendant O'Mara argues that the plaintiff's § 1983 claim against him based on the First Amendment should be dismissed because the plaintiff has failed to allege an "affirmative link" between O'Mara's actions and a violation of his First Amendment rights.

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) is one of limited inquiry, focusing not on "whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Scheuer v. Rhodes, 416 U.S. 232, 236 (1974).  Accordingly, the court must take the factual averments contained in the complaint as true, "indulging every reasonable inference helpful to the plaintiff's cause." Garita Hotel Ltd. Partnership v. Ponce Fed. Bank, 958 F.2d 15, 17 (1st Cir. 1992); see also Dartmouth Review v. Dartmouth College, 889 F.2d 13, 16 (1st Cir. 1989).  In the end, the court may grant a motion to dismiss under Rule 12(b)(6) "`only if it clearly appears, according to the facts alleged, that the plaintiff cannot recover on any viable theory.'" Garita, 958 F.2d at 17 (quoting Correa-Martinez v. Arrillaga-Belendez, 903 F.2d 49, 52 (1st Cir. 1990)).

There is no respondeat superior liability under § 1983.  A supervisor "'may be found liable only on the basis of [his] own

15

acts or omissions." Gutierrez-Rodriguez v. Cartagena, 882 F.2d 553, 562 (1st. Cir. 1989) (quoting Figueroa v. Aponte-Roque, 864 F.2d 947, 953 (1st Cir. 1989)). Absent a supervisor's participation in the challenged conduct, supervisory liability only can attach when the supervisor's acts or omissions amount to callous indifference to the rights of others, id. (citing Germany v. Vance, 868 F.2d 9, 17-18 (1st Cir. 1989)), and there is an "affirmative link" between the supervisor's act or omission and the alleged deprivation, id.; see also Hegarty v. Somerset County, 53 F.3d 1367, 1379-80 (1st Cir.) (affirmative link must lead inexorably to the constitutional violation), cert. denied, 1995 WL 62773 (U.S. Dec. 11, 1995).

Mindful of the plaintiff's pro se status, the court has carefully reviewed the plaintiff's pleadings. The plaintiff has failed to allege that O'Mara ordered or in any way participated in the denial of his request to attend services. As such, the plaintiff's § 1983 claim against O'Mara is limited to a supervisory liability theory. However, the plaintiff also has failed to allege any act or omission on the part of O'Mara that can be said to have led inexorably to the denial of the plaintiff's First Amendment rights. Indeed, the plaintiff's only factual averment concerning this issue that even potentially concerns O'Mara -- his reference to a conversation with a priest

16

in which the priest expressed his inability to resolve his disagreements with the prison's administration about church services -- is insufficient to demonstrate an affirmative link between O'Mara's conduct and a violation of the plaintiff's rights.  Accordingly, the plaintiff's § 1983 claim against O'Mara based on a violation of his First Amendment rights must be dismissed.[5]

Conclusion

The motion to dismiss of O'Mara (document no. 51) is granted.  The motion for summary judgment of Vacca and Dyer (document no. 52) is denied.  The motion for summary judgment of Hillsborough County, O'Mara, Rhoades, Raymond, Sullivan, and Provost (document no. 61) is denied.

SO ORDERED.

_____
Joseph A. DiClerico, Jr.
Chief Judge

January 9, 1996

cc:  Bruce T. Raineri, pro se
     Carolyn M. Kirby, Esquire

---

[5]The court does not reach the issues of O'Mara's liability for any of the other claims the plaintiff has brought in this action, or of the liability of the other individual defendants or of the Hillsborough County Department of Corrections for the plaintiff's claim based on his rights under the First Amendment.