Alicia **RODRIGUEZ NARVAEZ,**
**Plaintiff, Appellant,**

v.

Ariel **NAZARIO, etc., et al.,**
**Defendants, Appellees.**

**No. 89–1111.**

United States Court of Appeals,
First Circuit.

Heard Oct. 31, 1989.
Decided Feb. 5, 1990.

Frank Rodriguez Garcia, with whom, Francisco J. Rodriguez Juarbe, was on brief, for plaintiff, appellant.

Vanessa Ramirez, Asst. Sol. Gen., with whom Jorge E. Perez Diaz, Sol. Gen. and Norma Cotti Cruz, Deputy Sol. Gen., Dept. of Justice, were on brief, for defendants, appellees.

Before TORRUELLA, Circuit Judge, COFFIN, Senior Circuit Judge, and PEREZ–GIMENEZ,* District Judge.

* Chief Judge of the District of Puerto Rico, sitting by designation.

PEREZ–GIMENEZ, District Judge.

In the tradition of the long line of political discrimination cases arising from the federal trial courts of the Commonwealth of Puerto Rico, plaintiff-appellant Alicia Rodríguez Narváez instituted this civil rights action against officials of the Island's Housing Department for a mid-quadrennium transfer which she perceived to be motivated on political grounds. Both parties then loosed a series of motions centering on the issue of the timeliness of the complaint and the District Court ultimately dismissed the action as being time-barred. It is from this dismissal that plaintiff now appeals in a Lazarus-like effort to resurrect her claim. A careful review of appellant's arguments, however, leaves us unpersuaded, and we therefore affirm.

I

Although this appeal ultimately hinges on a determination of a couple of mixed questions of fact and law, the facts germane to this controversy are, for the most part, not in dispute. We summarize them in compendiary fashion, then survey the applicable law.

A

Plaintiff-appellant was hired by the Urban Renewal and Housing Corporation of Puerto Rico (CRUV) for a career position as a legal secretary on or about the year 1972. During the next 15 years or so she was promoted several times within both the CRUV and Housing Department of Puerto Rico. In the dawning days of 1986, however, the winds of change began to blow. On January 21, 1986, Rodríguez Narváez was notified by codefendant-appellee Jose L. Purcell—then Deputy Secretary of Legal Affairs of the Housing Department— that she would be transferred to the Litigation Division of the Housing Department. The transfer was considered by plaintiff to be a demotion.

Though somewhat slow in reacting, appellant eventually let the fact be known that she had not taken her "demotion" lightly. On September 1, 1986, she sent a letter through her attorney to codefendant-appellee Ariel Nazario—then Secretary of the Housing Department—requesting reinstatement to her previous position in the office of the Deputy Secretary for Legal Affairs. The letter, among other things, alleged that the transfer was the result of political discrimination and failed to comport with the Public Service Personnel Act of Puerto Rico. The letter also closed with a veiled threat, as it stated that it (the letter) was "a step which I deem proper before initiating any legal proceedings under 42 U.S.C. § 1983."

On October 24, 1986, the Secretary answered appellant's letter. Outside counsel had been assigned to investigate Rodríguez Narváez's transfer, the letter read, and any political wrongdoing was vigorously denied. In a move which more than anything else provided appellant with the strongest argument she would be able to present on her behalf, the letter stated that he "ha[d] given instructions to counsel [codefendant-appellee] Purcell to reinstate Mrs. Rodríguez to her usual place of work and to continue assigning her duties becoming her position."

In the latter days of October, 1986, appellant met with Purcell and an agreement was reached regarding her reinstatement. Days became nights and nights became days, however, and there was no positive action on defendants' part, so Rodríguez Narváez wrote a second letter, this time addressed to Purcell, requesting only her reinstatement. The letter was dated March 12, 1987, and a copy of it was sent to Secretary Nazario.

On August 1, 1987, codefendant Pablo J. Santiago was appointed to replace Purcell. Appellant immediately made Santiago aware of her reinstatement dispute. Whatever negotiations took place this time around, it appears, were carried out strictly on verbal terms. After a couple of months of roundabouts, however, Santiago informed appellant that "pressure from above" prevented him from reinstating her.

Appellant filed her Section 1983 complaint on October 5, 1987, seeking damages for violation of her civil rights under the

First and Fourteenth Amendments to the federal Constitution, as well as injunctive relief by way of reinstatement. After some preliminary skirmishing, on January 28, 1988, defendant-appellees filed a Fed.R. Civ.P.Rule 12(b)(1) Motion to Dismiss on statute of limitation grounds. Oppositions and replies followed, discovery was completed, and the case was set for trial on May 6, 1988. On April 25, 1988, however, the District Court entered an Order vacating the trial setting. On December 6, 1988, the Court entered its Opinion and Order dismissing the action on statute of limitation grounds, 703 F.Supp. 3. This appeal ensued.

B

The parties agree, as they must, over the law to be applied to the instant case. Section 1988[1] of the Civil Rights Acts directs courts to resort to a three-step process in order to determine the rules of decision applicable to civil rights claims:

> First, courts are to look to the laws of the United States "so far as such laws are suitable to carry [the civil and criminal civil rights statutes] into effect." If no suitable federal rule exists, courts undertake the second step by considering application of state "common law, as modified and changed by the Constitution and statutes" of the forum State. A third step asserts the predominance of the federal interest: courts are to apply state law only if it is not "inconsistent

with the Constitution and laws of the United States."

*Burnett v. Grattan,* 468 U.S. 42, 47–48, 104 S.Ct. 2924, 2928, 82 L.Ed.2d 36 (1983) (quoting 42 U.S.C. § 1988). Civil rights actions are characterized by the fact that § 1983 does not contain a specific statute of limitations, "a void which is commonplace in federal statutory law." *Board of Regents v. Tomanio,* 446 U.S. 478, 483, 100 S.Ct. 1790, 1794, 64 L.Ed.2d 440 (1983). Consequently, courts have been encouraged to "borrow"[2] the state statute of limitations which is "most appropriate," *Johnson v. Railway Express Agency, Inc.,* 421 U.S. 454, 462, 95 S.Ct. 1716, 1721, 44 L.Ed.2d 295 (1975), or "most analogous," *Board of Regents v. Tomanio,* 446 U.S. at 488, 100 S.Ct. at 1797; *Rivera Fernández v. Chardón,* 648 F.2d 765 (1st Cir.1981); *Ramírez de Arellano v. Alvarez de Choudens,* 575 F.2d 315 (1st Cir.1978), to the particular Section 1983 claim, as long as that statute is not inconsistent with federal law and policy.[3] *See generally, Owens v. Okure,* — U.S. —, 109 S.Ct. 573, 576, 102 L.Ed.2d 594 (1989).

The search for the "most analogous" state limitations period predictably produced numerous and contrasting results.[4] In *Wilson v. García,* 471 U.S. 261, 272, 105 S.Ct. 1938, 1945, 85 L.Ed.2d 254 (1984), the Supreme Court offered to put an end to this confusion by adopting a "simple, broad characterization of all § 1983 claims." After noting that the question of characterization is a matter of federal, not state law,[5] an examination of the statute's legis-

---

**1.** 42 U.S.C. § 1988.

**2.** Limitation borrowing has been practiced in federal courts since as early as 1914 in *O'Sullivan v. Felix,* 233 U.S. 318, 34 S.Ct. 596, 58 L.Ed. 980. It responds to a conscious congressional decision to defer to "the State's judgment on the proper balance between the policies of repose and the substantive policies of enforcement embodied in the state cause of action." *Wilson v. García,* 471 U.S. 261, 271, 105 S.Ct. 1938, 1944, 85 L.Ed.2d 254 (1984).

**3.** Among the federal interests most frequently cited by the Supreme Court in relation with the Civil Rights Act are compensation and deterrence, *see Burnett v. Grattan,* 468 U.S. 42, 55, 104 S.Ct. 2924, 2932, 82 L.Ed.2d 36 (1984), and uniformity and federalism, *see Hardin v. Straub,*

— U.S. —, 109 S.Ct. 1998, 2001, 104 L.Ed.2d 582 (1989). *See also Chardón v. Fumero Soto,* 462 U.S. 650, 657, 103 S.Ct. 2611, 2616, 77 L.Ed.2d 74 (1982).

**4.** See *Owens v. Okure,* — U.S. —, 109 S.Ct. 573, 102 L.Ed.2d 594 (1989), footnotes 3, 5, 7, and 8.

**5.** Another issue which is a matter of federal law is the question of when plaintiff-appellant's cause of action accrued. *Rivera Fernández v. Chardón,* 648 F.2d 765, 767 (1st Cir.1981); *Cox v. Stanton,* 529 F.2d 47, 50 (4th Cir.1975). The general rule established by these cases is that the time of accrual of a civil rights action is when the aggrieved party knows or has reason to know of the injury which is the basis for his action or when facts supportive of a civil rights

lative history and of the vast array of actions now embraced by it led the Court to conclude that "[h]ad the 42d Congress expressly focused on the issue decided today, ... it would have characterized § 1983 as conferring a general remedy for injuries to personal rights." *Id.*, 471 U.S. at 278, 105 S.Ct. at 1948. *See also Small v. Inhabitants of City of Belfast*, 796 F.2d 544 (1st Cir.1986), and *Altair Corp. v. Pesquera de Busquets*, 769 F.2d 30 (1st Cir.1985). Therefore, the most analogous state limitations period will generally be the one reserved for personal torts.[6]

▉ The borrowing, we suggest, did not stop there. In *Johnson v. Railway Express Agency*, 421 U.S. at 464, 95 S.Ct. at 1722, the Supreme Court observed that periods of limitation had to be viewed in the context of the provisions that suspend them from running since the chronological length of a period is generally intertwined with the circumstances providing for tolling, revival, and other questions of application. The Court added that "[i]n borrowing a state period of limitation for application to a federal cause of action, a federal court is relying on the State's wisdom in setting a limit, and exceptions thereto, on the prosecution of a closely analogous claim." 421 U.S. at 464, 95 S.Ct. at 1722. Hence, it is clear that for the resolution of this case resort must be had not only to the limitations period for personal injury actions in Puerto Rico but also to the tolling rules provided by its laws. *Ramírez Morales v. Rosa Viera*, 815 F.2d 2, 4 (1st Cir.1987). They constitute, if we may borrow the phrase, "binding rules of law." *Board of Regents v. Tomanio*, 446 U.S. at 484, 100 S.Ct. at 1795.

▉ Our survey must thus proceed along two distinct, albeit related, roads. Along the first of them, however, we need not travel far. Ever since the days of the Spanish–American war it has been the law of Puerto Rico that the limitations period for tort actions, or "obligations arising from fault or negligence," is the one year limitations period provided by Article 1868(2) of the Civil Code, P.R.Laws Ann. tit. 31, § 5298(2). *De León Otero v. Rubero*, 820 F.2d 18, 19 (1st Cir.1987); *Ramírez Morales v. Rosa Viera*, 815 F.2d, at 4; *Altair Corp. v. Pesquera de Busquets*, 769 F.2d, at 31; *Rivera Fernández v. Chardón*, 648 F.2d, at 766; *Ramírez de Arellano v. Alvarez de Choudens*, 575 F.2d, at 318; *Hernández del Valle v. Santa Aponte*, 575 F.2d 321 (1st Cir.1978); *Graffals González v. García Santiago*, 550 F.2d 687, 688 (1st Cir.1977). *See also Díaz Maldonado v. Lacot*, 89 J.T.S. 14, 6602 (1989); *Delgado Rodríguez v. Nazario de Ferrer*, 88 J.T.S. 63, 5867 (1988); *Silva Wiscovich v. The Weber Dental Manufacturing Co.*, 87 J.T.S. 93 (1987). It is therefore unnecessary to pursue this point any further.

Turning to the tolling issue, however, we observe that although this path has been just as well travelled in our courts, it does require a little clearing. We therefore digress for a moment and proceed to present it in expository form.

▉ We begin with bedrock concepts of Puerto Rico's limitation laws. *Le raison d'etre* of the doctrine of "extinctive prescription" has been worded differently at different periods of time by the Puerto Rico Supreme Court, but we consider the

action are or should be apparent to a reasonably prudent person similarly situated. See also *Marrapese v. Rhode Island*, 749 F.2d 934, 936 (1st Cir.1984). The parties in this appeal do not seem to dispute the fact that Rodríguez Narváez' civil rights action accrued on January 21, 1986, the date she was notified of her transfer, and focus their attention on the tolling effect, if any, that the subsequent letters might have had. We follow their lead. See *also Chardón v. Fernández*, 454 U.S. 6, 102 S.Ct. 28, 70 L.Ed.2d 6 (1981), and *Delaware State College v. Ricks*, 449 U.S. 250, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980) (holding that the limitations period begin to run

when the letter notifying the termination is received and not when the consequences are felt). We note in passing that the law of Puerto Rico is identical in this respect, see *Delgado Rodríguez v. Nazario de Ferrer*, 88 J.T.S. 63 (1988).

6. In *Owens v. Okure*, — U.S. —, 109 S.Ct. 573, 102 L.Ed.2d 594 (1989), the Supreme Court further clarified its *Wilson* decision by holding that in states that have one or more limitation periods for certain enumerated intentional torts and a residual statute for all other injuries to personal rights it is the latter provision that is of application to actions under Section 1983.

ensuing definition to be a fair representation of it. In *Agulló v. ASERCO*, 104 P.R.R. 346, 351 (1975), following the lead of a renowned Spanish commentator, the Court stated:

> The statutory limitation of actions protects ... a very concrete particular interest: the interest of an individual not to be exposed to old claims, of which memory has been lost, because silence has created an objective and reasonable confidence that the right or power would not be exercised. Díez Picazo, *La Prescripción en el Código Civil*, (1964), p. 56.

Thus, its objective is threefold: it attempts to punish the negligent prosecution of actions, *see Silva Wiscovich*, 87 J.T.S. at 5132, 5133; it seeks to promote stability in juridical relations, *see Ortiz v. Municipality of Orocovis*, 113 P.R.R. 619,[7] and it pursues the practical concern of avoiding the institution of actions long after memories have faded. *See generally De Jesús v. Chardón*, 116 D.P.R. 238, 243 (1985). We must also pause to point out the fact that the courts of Puerto Rico have consistently observed that civil law tradition, and not common law, governs the rules applicable to limitation periods and tolling provisions under Puerto Rican law. *Silva Wiscovich*, 87 J.T.S. at 5131; *Mortensen v. San Juan Mercantile Co.*, 87 J.T.S. 76, 5051 (1987); *Olmo v. Young & Rubicam of P.R., Inc.*, 110 P.R.R. 965, 969 (1981); *Febo Ortega v. Tribunal Superior*, 102 P.R.R. 506, 509 (1974); *De Jesús Martinez v. Chardón*, 116 D.P.R. 238 n. 4 (1985). Moreover, the same cases reveal that the rules governing the limitation of actions form part of the substantive, not procedural, law of Puerto Rico. *See also Feliciano v. A.A.A.*, 93 P.R.R. 638, 640 (1966). Thus, it is evident

that special care must be taken when dealing with limitation problems under Puerto Rican law.

 Several other points of law are worthy of mention at this juncture in our discourse. The Supreme Court of Puerto Rico has stated that in view of the importance of the institution of "extinctive prescription" in the civil law tradition tolling provisions must be interpreted restrictively against the person invoking their protection.[8] *Díaz de Diana v. A.J.A.S. Ins. Co.*, 110 P.R.R. 602, 607–608, n. 1 (1980). *See also Fernández v. Chardón*, 681 F.2d 42, 54 (1st Cir.1982) (following this directive). It is also well established that once the period of limitations is interrupted through any of the ways available under Puerto Rico laws and the tolling ends, the statute of limitations begins to run anew, *Díaz de Diana v. A.J.A.S. Ins. Co.*, 110 P.R.R. at 606; *Durán Cepeda v. Morales Lebrón*, 112 P.R.R. 776, 779 (1982); *Silva Wiscovich v. The Weber Dental Manufacturing Co.*, 87 J.T.S. at 5133; *Chardón v. Fumero Soto*, 462 U.S. at 661, 103 S.Ct. at 2618; *Fernández v. Chardón*, 681 F.2d, at 49. Lastly, tolling the statute as to one jointly and severally liable defendant tolls it as to all, P.R.Laws Ann. tit. 31, § 5304, *Rivera Otero v. Casco Sales Co.*, 115 D.P.R. 662, 667 (1984), but the tolling is effective with regard only to identical causes of action. The statute of limitations is not tolled for all claims arising out of the same facts, *Ramírez de Arellano v. Alvarez de Choudens*, 575 F.2d, at 319–320; *Fernández v. Chardón*, 681 F.2d, at 49.

We now introduce the specific tolling provisions prescribed by Puerto Rican law. They are found in Article 1873 of the Civil

---

7. Where the Court stated, quoting from another famed Spanish commentator, in pages 623–624:
 ... the principle of the statute of limitations should be seen objectively since through it "the stability of property and certainty of other rights are guaranteed. The economy and the juridical sector would suffer a serious blow if the state of facts represented by the exercise of a right or by the failure to exercise a right would not in time become an inviolable state of law." Castán Tobeñas, *Derecho Civil Español, Común y Foral*, 10ma ed., 1963, T. 1, Vol. 2, p. 834 (official translation).

8. With regard to its tolling doctrine, the Supreme Court of Puerto Rico phrased its objective in the following terms:
 [T]he acknowledged principle of interruption is the unmistakable manifestation of one who threatened with the loss of his right expresses his wish not to lose it.
 *Díaz de Diana*, 110 P.R.R., at 609, *quoting from Feliciano v. A.F.F.*, 93 P.R.R. 638 (1966) (official translation).

Code, P.R.Laws Ann. tit. 31, § 5303, which states:

> Prescription of actions is interrupted by their institution before the courts, by extrajudicial claim of the creditor, and by any act of acknowledgement of the debt by the debtor.

See *Federal Insurance Co. v. Banco Popular*, 750 F.2d 1095, 1098 (1st Cir.1983); *Ramírez de Arellano v. Alvarez de Choudens*, 575 F.2d, at 319. There are thus three ways in which statutes of limitations can be tolled as far as Puerto Rico law goes.[9] Only the latter two concern us for this appeal.[10] We address them in turn.

■ This is not the first time this Court has had to do battle with the meaning of the words "extrajudicial claim of the creditor," *see Hernández del Valle v. Santa Aponte*, 575 F.2d 321, 323–324 (1st Cir. 1978). The phrase, in all honesty, is difficult to define, perhaps due in part to the fact that, viewed abstractly, it encompasses an array of actions as diverse as human conduct itself. The Supreme Court of Puerto Rico has often cited the words of Spanish commentator Díez–Picazo when confronted with an issue under the "extrajudicial claim" clause of Article 1873. Unable to improve on the Spaniard's effort, we present it *ad verbatim:*

> In principle, claim stands for demand or notice. That is: it is an act for which the holder of a substantive right, addresses the passive subject of said right, demanding that he adopt the required conduct. The claim, then, is a pretension in a technical sense.

*Díaz de Diana*, 110 P.R.R. at 608, and *Secretario del Trabajo v. Finetex Hosiery Co.*, 86 J.T.S. 13, 4204. Thus, an extrajudicial claim does in fact include virtually any

demand formulated by the creditor. The only limitations are that the claim must be made by the holder of the substantive right (or his legal representative), *De Jesús v. Chardón*, 116 D.P.R. at 248, *Finetex Hosiery Co.*, 86 J.T.S. at 4202, it must be addressed to the debtor or passive subject of the right, not to a third party, *Velilla v. Pueblo Supermarkets, Inc.*, 111 P.R.R. 732, 734–735 (1981), and it must require or demand the same conduct or relief ultimately sought in the subsequent lawsuit. *Fernández v. Chardón*, 681 F.2d, at 53.[11]

■ As for the latter tolling provision of Article 1873, the "act of acknowledgement of the debt by the debtor," we look to the Puerto Rico Supreme Court's extensive discussion in *Widow of Carlo v. Toro*, 99 P.R.R. 196 (1970), more recently relied on in *Díaz de Diana v. A.J.A.S. Ins. Co.*, 110 P.R.R. 602, 615 (1980). The following quote, we believe, correctly captures the thrust of these decisions as they attempted to define yet another elusive, albeit significant phrase. An "act of acknowledgement of the debt by the debtor" is "any valid act which actually implies the [debtor's] absolute conformity with the right of the creditor." *Widow of Carlo*, 99 P.R.R. at 207. The act must communicate the debtor's specific intention of acknowledging the survival of another person's right; it must be spontaneous, unequivocal and clear; and it can never be deduced from acts or conduct from which only indirect inferences can be made as to the debtor's acknowledgement of the effectiveness of the creditor's right. *Díaz de Diana*, 110 P.R.R. at 615.

## II

■ Having examined the case law, we now turn to the task at hand. There is no

---

**9.** Without expressly ruling on the issue (since it was not necessary for the resolution of the case) this Court in *Ramírez Morales v. Rosa Viera*, 815 F.2d 2, 4 (1st Cir.1987), and quoting from *Rivera Encarnación v. E.L.A.*, 113 P.R.R. 498 (1982), noted that "Puerto Rico law provides for equitable tolling in a case of 'damages willfully and wrongfully concealed by the author of the same.'" We equally express no opinion as to this point today.

**10.** For a decision of the Supreme Court of Puerto Rico discussing the cases under the first of

the methods of tolling the statute of limitations (the filing of the complaint) *see Silva Wiscovich v. The Weber Dental Manufacturing Co.*, 87 J.T.S. 93 (1987).

**11.** In the *Chardón* case this Court also noted, relying on the language used by the Supreme Court of Puerto Rico in *Jiménez v. District Court*, 65 P.R.R. 35, 42 (1945), that the extrajudicial claim must be "precise and specific" to have the purported tolling effect.

dispute over the fact that appellant's right of action accrued on January 21, 1986, the date she was notified of her transfer. Equally uncontestable is the fact that her Section 1983 complaint was filed on October 5, 1987, almost nineteen months after the date of accrual. Thus, one or more tolling acts must have occurred during these nineteen months to render her action timely. Appellant points to her letters of September 1, 1986, and March 12, 1987, addressed to appellees Nazario and Purcell, respectively, as well as to Nazario's response letter of October 24, 1986.[12] Appellees, predictably, contest them. Mindful of the Puerto Rico's Supreme Court admonition that tolling acts must be interpreted restrictively against the party invoking their protection, we evaluate the candidates.

The moment we turn to consider the tolling effect of the September 1, 1986, letter we realize that we need not answer such a question in this case. We explain briefly. Even had said letter tolled the period of limitations which began to run on January 21, 1986, another tolling act would have been needed for the October 5, 1987, complaint to be timely. This is so because by the filing date the letter had been history for more than a year. As noted above, tolling acts under Puerto Rican law have the effect of causing the limitations period to run anew for another year in full. On the other hand, the October 24, 1986, letter, standing by itself, would have been sufficient to render the suit timely if it did in fact toll the period of limitations. As for the March 12, 1987, letter, its tolling effect had to be coupled with a corresponding tolling effect of the September 1 letter to be of any significance. If the statute of limitations had not been interrupted on September 1, 1986, the March 12, 1987, letter would be inconsequential, and we would have no occasion to consider it. Accordingly, we assume, *arguendo*, that the September 1 letter did toll the statute of limitations and focus our attention on the other two.

In order for us to conclude that the October 24 letter tolled the statute of limitations we must determine that it falls within the purview of the third of the tolling provisions listed in Article 1873 of the Civil Code of Puerto Rico; that is to say, that it constitutes an "act of acknowledgement of the debt by the debtor." We have read the letter, however, and we fail to detect the tone of *mea culpa* in the Secretary's prose. To the contrary, Nazario related how an outside counsel's investigation into the matter could find no wrongdoing in appellant's transfer, he praised the virtues of those who commit their lives to public service while encouraging appellant to follow their lead, and he finally "reject[ed] with all [his] might and [his] understanding the allegations [made] about partisan political discrimination." This is a far cry from the expression of "absolute conformity with the right of the creditor" required by the case law of the Puerto Rico Supreme Court. *Widow of Carlo v. Toro*, 99 P.R.R. at 207. Rather than "acknowledging the existence of appellant's rights," *Díaz de Diana v. A.J.A.S. Ins. Co.*, 110 P.R.R. at 615, the spirit of the letter asserts the propriety of the actions taken by the appellees.

Although we believe the aforementioned arguments lend sufficient support to our conclusion today, we leave no stone unturned. Appellant relies heavily on Nazario's instruction to co-appellee Purcell, as expressed in the letter in controversy, that notwithstanding his denial of the existence of political motivations behind appellant's transfer he had given instructions to co-appellee Purcell to reinstate her to her previous position and to continue assigning her duties which were appropriate to her posi-

12. As appellant iterates and reiterates in her appellate brief, the Supreme Court of Puerto Rico has held that the admission by the debtor of the existence of the claim or right asserted, whether verbal or in writing, must be clear and unequivocal and not part of settlement negotiations. *Díaz de Diana*, 110 P.R.R. 602 (1980).

Consequently, we can not find tolling significance in appellant's and appellee's settlement negotiations regarding their dispute and, under the circumstances of this case, we must confine our attention to the letters addressed to each other by the parties.

tion. However, this instruction, it seems to us, far from being a result of appellee's acknowledgement of Rodriguez Narvaez's right to her previous position, constituted an attempt by Nazario to send the problem on to another official's desk. Put another way, the Secretary, like Pilatus, was trying to divert whatever responsibility might arise from the situation before him away from his own hands. But unlike the procurator of old, he cannot now be called forward to face the consequences of his act. His instruction, as far as the "debt acknowledgement" provision of Article 1873 goes, does not have the effect of interrupting the period of limitations. It no more acknowledged the effectiveness of Rodriguez Narvaez's alleged right than the rest of the letter did. The only effect, if any, that it should have had was that of making appellant aware of the fact that, in between appellees' runarounds and roundabouts, the time was getting ever nearer when she should seriously begin thinking about filing her Section 1983 complaint.

■ Appellant's chances thus depend on the tolling effect that can be attributed to the March 12, 1987, letter addressed to codefendant Purcell. The letter, however, fails to pass muster on at least one of the requisites established by the Supreme Court of Puerto Rico for extrajudicial claims of creditors under Article 1873. A dispassionate reading of the letter reveals that it merely recounts the conversations she had had with the parties to this appeal and only complains about the inordinate workload that she presumably was carrying at the time. At no time is any mention made of the political discrimination allegations that would be central to her suit. No claim for damages is made, no legal action is announced, no Section 1983 suit is implied. It is clear then that her professed extrajudicial claim did not "seek the same relief ultimately sought in the subsequent lawsuit," *Fernandez v. Chardon*, 681 F.2d, at 53, and thus did not have the effect of tolling the statute of limitations running against appellant's possible civil rights suit.

### III

The balance of appellant's arguments requires no additional response. If Rodriguez Narvaez had a case to make she had to be diligent in exercising her rights before our courts. Taking into account the facts that her action accrued nineteen months before the filing of her complaint, and that the tolling acts, if any, that occurred during those months could not be arranged to fall within a year of the filing date, it is clear that the limitations clock ticked for the final time well before her action was filed. The District Court's dismissal is therefore

Affirmed.