# United States Court of Appeals
## For the First Circuit

No. 07-2662

ORLANDO RODRÍGUEZ,

Plaintiff, Appellant,

v.

SUZUKI MOTOR CORPORATION,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Aida M. Delgado-Colón, U.S. District Judge]

Before

Torruella, Lipez, and Howard,
Circuit Judges.

Peter John Porrata, with whom Law Offices of Peter John Porrata, was on brief for appellant.
Antonio Gnocchi-Franco, with whom Gnocchi Franco Law Offices, Larry M. Roth, and Law Office of Larry M. Roth, P.A., were on brief for appellee.

June 22, 2009

**TORRUELLA**, **Circuit Judge**.  Plaintiff, Orlando Rodríguez ("Rodríguez") brought this diversity action against Suzuki Motor Corporation ("Suzuki") alleging that a manufacturing defect in his Suzuki motorcycle caused the injuries he sustained in a motorcycle accident.  The United States District Court for the District of Puerto Rico granted Suzuki's motion for summary judgment on the ground that the complaint was barred by the applicable one-year statute of limitations.  Rodríguez appeals the dismissal on the theory that under Puerto Rico law, his previously filed complaint against other entities that were jointly and severally liable with Suzuki tolled the statute of limitations for the instant action against Suzuki.  After careful consideration, we reverse.

## I.  Background

As this is an appeal from a grant of summary judgment, we "view the record in the light most favorable to the nonmoving party and draw all reasonable inferences in favor of the same." Chadwick v. WellPoint, Inc., 561 F.3d 38, 41 (1st Cir. 2009).

This action arises out of an accident that occurred on June 22, 2001.  On that day, at approximately 1:30 a.m., Rodríguez was driving his Suzuki GSX/1300R motorcycle along Las Américas Express Road in Puerto Rico, when he started to experience a shaking on the front fork of the motorcycle, the handlebars, and grips.  Suddenly, he fell off the motorcycle on to the road. Rodríguez alleges that he was surprised as there was no reason for

the fall to have occurred. When he looked at the motorcycle, he noticed that the frame had split in half and separated the front fork from the rest of the frame. Rodríguez alleges that as a result of this motorcycle accident he suffered various injuries.

On June 20, 2002, Rodríguez, who was at that time a citizen of Florida, filed a complaint in the United States District Court for the District of Puerto Rico (the "2002 Action") against the retail seller of the Suzuki motorcycle, Rainbow Motors Inc. ("Rainbow"), a Puerto Rico corporation. Rodríguez amended the complaint on October 16, 2002 to include the distributor of the motorcycle, Panorama Motors Inc. ("Panorama"), also a Puerto Rico corporation. In his complaint, Rodríguez alleged that the injuries he sustained were a direct and proximate result of the motorcycle's defective design, a manufacturing defect, defendants' negligent marketing, and defendants' failure to adequately warn. Rodríguez's complaint in the 2002 Action did not name the manufacturer of the motorcycle, Suzuki, as a defendant.

On March 7, 2003, Rainbow moved to file a third-party complaint against Suzuki, a Japanese corporation. Because Suzuki is a foreign corporation, Rainbow was required to follow the procedures established for service under the Hague Convention and these requirements caused some delay.[1] On March 19, 2003 Rainbow

---

[1] See Fed. R. Civ. P. 4(f)(1) (providing that an individual in a foreign country may be served "by any internationally agreed means of service . . . such as those authorized by the Hague Convention

-3-

filed a motion to stay the litigation until Suzuki was joined as a party. On March 25, 2003, the district court denied this motion. On June 4, 2003, Rainbow moved to voluntarily dismiss, without prejudice, its third-party complaint against Suzuki. The court granted this motion. On November 10, 2003, Rodríguez moved to voluntarily dismiss the 2002 Action without prejudice. The court granted this motion as well.

On May 10, 2004, Rodríguez commenced a new action in the federal district court by filing a complaint against Suzuki (the "2004 Action"). The 2004 Action did not name Rainbow or Panorama as defendants.[2] On February 9, 2005, the court dismissed the 2004 Action without prejudice pursuant to Fed. R. Civ. P. 4(m) because, despite various extensions, Rodríguez had not completed service of process against Suzuki.

On February 6, 2006, Rodríguez, again in the federal district court, filed a new action against Suzuki (the "2006 Action"), from which this appeal arises. As was the case with the 2004 Action, Rainbow and Panorama were not named as defendants in the 2006 Action. Suzuki moved for summary judgment on the ground

on the Service Abroad of Judicial and Extra Judicial Documents"); Fed. R. Civ. P. 4(h)(2) (providing that a corporation outside the United States must be served in any manner prescribed by Rule 4(f) for serving an individual).

[2] Rodríguez admits that he chose not to include Rainbow and Panorama in the 2004 Action in an effort to preserve federal diversity jurisdiction. At the time Rodríguez filed the 2004 Action, his residence had changed to Puerto Rico.

that Rodríguez had failed to file his suit within the applicable one-year statute of limitations for tort actions under Puerto Rico law. Rodríguez opposed summary judgment, relying on Puerto Rico's "solidarity doctrine" to argue that his 2002 Action against Panorama and Rainbow, with whom Suzuki was jointly and severally liable, tolled the statute of limitations with respect to the later-filed actions against Suzuki. The district court granted Suzuki's motion for summary judgment. Rodríguez v. Suzuki Motor Corp., No. 06-1144, slip op. (D.P.R. Aug. 29, 2007) (opinion and order granting summary judgment).

The district court held that Rodríguez failed to bring his suit within the applicable one-year prescriptive period from the date that he was put on notice of his injury, the manufacturer's defect, and the manufacturer's identity. Id. at *7. The district court further held that the 2002 Action did not toll or reset the statute of limitations with respect to Rodríguez's claims against Suzuki. Id. at *11. Finding that solidarity existed between Suzuki, Rainbow and Panorama, the court noted that "[i]nasmuch as the 2002 Action was timely filed," the solidarity doctrine would have allowed Rodríguez to amend his 2002 complaint to add Suzuki, but "[Rodríguez] made an affirmative decision not to do this." Id. at *9. Rather, Rodríguez chose to voluntarily dismiss the 2002 action and then file a subsequent complaint. The court explained that in order for a prior suit to toll and reset

-5-

the statute of limitations with respect to a subsequent suit, Puerto Rico law requires "identicality" of claims, relief requested, and defendants.  Id. at *10 (quoting Rodríguez-García v. Mun. of Caguas, 354 F.3d 91, 98 (1st Cir. 2004)).  Noting that "Suzuki was not a party to the 2002 Action, and neither Rainbow nor Panorama were sued in the 2004 Action," the court concluded that the "2002 Action did not continue to preserve or toll the Statute of Limitations against [Suzuki] since the 2004 Action was not identical."  Id. at *11.  Finding the 2004 Action to be untimely, it held that "the case at bar [was] likewise untimely."  Id.

Rodríguez timely appealed from the district court's grant of summary judgment in favor of Suzuki.

## II.  Discussion

### A.  Standard of Review

"We review the district court's decision to grant defendant's motion for summary judgment on statute of limitations grounds de novo, construing the record in the light most favorable to the non-moving party."  Douglas v. York County, 433 F.3d 143, 149 (1st Cir. 2005) (citing Hadfield v. McDonough, 407 F.3d 11, 15 (1st Cir. 2005)).  "We will affirm if, based on our independent review of the evidentiary record, there is no genuine issue of material fact and the undisputed facts indicate that the moving party is entitled to judgment as a matter of law."  Id.; see also Fed. R. Civ. P. 56(c).

-6-

"Under the 'Erie Doctrine', federal courts sitting in diversity apply state substantive law and federal procedural law." Gasperini v. Ctr. for Humanities, Inc., 518 U.S. 415, 427 (1996). In Puerto Rico, the prescription of civil actions is a question of substantive rather than procedural law. See Rodríquez-Narvaez v. Nazario, 895 F.2d 38, 43 (1st Cir. 1990); García-Pérez v. Corporación de Servicios para la Mujer y la Familia, etc., 174 P.R. Dec. ----, 2008 TSPR 114, 2008 WL 2717833, at *4 (P.R. June 30, 2008). Thus, as this case comes before us under our diversity jurisdiction, we must apply Puerto Rico substantive law to resolve the statute of limitations issue in dispute.

"As a federal court sitting in diversity, our task is to 'interpret and apply as best we can the state rules of decision.'" Norton v. McOsker, 407 F.3d 501, 506 (1st Cir. 2005) (quoting Catex Vitol Gas, Inc. v. Wolfe, 178 F.3d 572, 576 (1st Cir. 1999)). We rely "on pronouncements of the state supreme court" and "ultimately 'our task is to ascertain the rule the state court would most likely follow under the circumstances, even if our independent judgment on the question might differ.'" Id. (quoting Wolfe, 178 F.3d at 576-77).

### B. Statute of Limitations

Rodríguez's action was brought under Puerto Rico's tort statute, Article 1802 of the Civil Code, see P.R. Laws Ann. tit. 31, § 5141, to which a one-year statute of limitations applies.

-7-

See P.R. Laws Ann. tit. 31, § 5298(2). The statute of limitations or prescriptive period for such tort actions begins to run "from the time the aggrieved person has knowledge thereof." P.R. Laws Ann. tit. 31, § 5298(2); see also García-Pérez, 2008 WL 2717833, at *4 (stating that the statute of limitations starts to run once the injured party knows both that he has suffered a harm and who is responsible for it).

Rodríguez does not dispute the applicability of the one-year prescription period to his action against Suzuki. The accident giving rise to Rodríguez's injuries undisputedly took place on June 22, 2001, and Rodríguez makes no contention that the action accrued at a later date. Nor is there any dispute that the instant action was filed on February 6, 2006, well past one year from the accrual of the cause of action.[3] Thus, unless the prescription period was effectively tolled, the instant action is time-barred. "Although prescription is an affirmative defense, once it has been raised, the burden of proving that prescription has been interrupted shifts to the plaintiff." See Tokyo Marine & Fire Ins. Co. v. Pérez y Cía., 142 F.3d 1, 4 (1st Cir. 1998) (citing Puerto Rico cases).

---

[3] The district court found that Rodríguez "had actual notice of the identity of [Suzuki] no later than March 19, 2003," as this was the day when Rainbow moved to stay the 2002 action until Suzuki could be joined. See Rodríguez, at *7 n.4. Whichever of these dates is the actual date of accrual, there is no question that the 2006 Action was filed more than one year thereafter.

-8-

## C.  Tolling

Rodríguez argues that because the statute of limitations was "tolled" as a matter of Puerto Rico law by his filing of intervening actions in 2002 and 2004, the district court erred in finding that the instant tort action against Suzuki was time-barred.  Rodríguez's argument proceeds as follows.  He argues that by filing the 2002 Action against Rainbow and Panorama within one-year of the accident, on June 20, 2002, Rodríguez "tolled" the statute of limitations with respect to all parties jointly and severally liable with those companies, including Suzuki, even though Suzuki was never a party to the 2002 Action.  Rodríguez further contends that when the 2002 Action was dismissed without prejudice on November 10, 2003, the one-year statute of limitations was reset and began to run anew, rendering his 2004 Action against Suzuki, filed six months later on May 10, 2004, timely as well.  Finally, Rodríguez contends that when the 2004 Action was dismissed without prejudice on February 9, 2005, he again had one year from that date to file a subsequent action.  Thus, Rodríguez takes the position that when he filed the instant action within 362 days from the dismissal of the 2004 action, on February 6, 2006, the action had not prescribed.  We agree.

Article 1873 of Puerto Rico's Civil Code provides three mechanisms by which the prescription of actions can be interrupted or "tolled": "[(1)] [B]y their institution before the courts, [(2)]

by extrajudicial claim of the creditor, and [(3)] by any act of acknowledgment of the debt by the debtor." P.R. Laws Ann. tit. 31, § 5303; see also Tokyo Marine, 142 F.3d at 4. When a plaintiff tolls the statute of limitations by bringing an action before the courts, "the mere filing of the complaint has a tolling effect," rather than service of the summons. See Durán-Cepeda v. Morales-Lebrón, 12 P.R. Offic. Trans. 776, 779 (1982). Moreover, the filing of an action tolls the statute of limitations even if "plaintiffs voluntarily dismiss[] the action without prejudice before the defendants ha[ve] been summonsed." Silva Wiscovich v. Weber Dental Mfg. Co., 19 P.R. Offic. Trans. 592, 604 (1987) (resolving question certified to it by this court); see also Silva-Wiscovich v. Weber Dental Mfg. Co., 835 F.2d 409, 410 (1st Cir. 1987) (subsequent review after Puerto Rico Supreme Court addressed certification question).

"Under Puerto Rico tolling rules, which are based on the Spanish civil law, the institution of an action in court is commonly held not only to interrupt the running of the applicable statute of limitations but, at least in the event of a voluntary or usual non-prejudicial dismissal of the original action, to cause the entire limitations period to run anew from the date the previous action came to a definite end." López-González v. Mun. of Comerío, 404 F.3d 548 (1st Cir. 2005) (citing Silva-Wiscovich, 835

-10-

F.2d at 410).[4]  An action comes to a "definite end," _inter alia_, on the date upon which such action is voluntarily dismissed without prejudice.  _See_ _Rodríguez-García_, 354 F.3d at 97 (quoting _Silva-Wiscovich_, 835 F.2d at 410).

Applying these tolling principles to the facts before us, we can conclude that if Rodríguez had in fact interrupted the statute of limitations with respect to his products liability suit against Suzuki when he instituted the 2002 Action (_see_ _infra_, Section II.D.), then this tolling effect persisted until that action came to a "definite end" on November 10, 2003, when it was voluntarily dismissed without prejudice.  At that point, the statute of limitations was reset and began to run anew for another year.  The filing of the 2004 Action within that year was therefore timely.  As the 2004 Action was also dismissed without prejudice, then, by the same logic, the filing of the 2006 Action within one year of its dismissal, was timely as well.

---

[4]  _See also_ _Rodríguez-García_, 354 F.3d at 97 (Once an action "comes to a definite end," the statute of limitations is reset and "begins to run anew from th[at] date."); _Rodríguez-Narvaez_, 895 F.2d at 43 ("It is . . . well established that once the period of limitations is interrupted through any of the ways available under Puerto Rico laws and the tolling ends, the statute of limitations begins to run anew."); _Sánchez Montalvo_ v. _Autoridad de los Puertos_, 153 P.R. Dec. 559, 568 (2001) (certified translation) ("The effect of the mechanisms of interruption is that the prescriptive term must be computed again completely from the moment in which is produced the act which interrupts."); _Durán-Cepeda_, 12 P.R. Offic. Trans. at 777 (citing _Feliciano_ v. _A.S.A._, 93 P.R. 638 (1966) for the proposition that "a whole new term begins to run at the termination of an action whose institution tolled the statute of limitations.").

-11-

Though not raised by the parties, we note one caveat to our interpretation of Puerto Rico's tolling provisions -- the issue of due diligence. The usual rule under Puerto Rico law is that the filing of a judicial action tolls the statute of limitations and, if the action is dismissed without prejudice, the limitations period is reset and starts to run again from that date. See Silva-Wiscovich, 19 P.R. Offic. Trans. at 603-04. Although Rodríguez's 2004 Action was dismissed by the district court as a result of Rodríguez's failure to complete service of process upon Suzuki in a timely manner, it was nevertheless dismissed "without prejudice." Thus, under the usual Puerto Rico tolling rule, the statute of limitations would re-run for the full period from the date of the dismissal. Id. This approach, however, may be in tension with "common law and equitable principles," under which "an involuntary dismissal made without prejudice but as a sanction does not toll the statute of limitations." See López-González, 404 F.3d at 554 (emphasis added and citing cases); see also Hilton Int'l Co. v. Unión de Trabajadores, 833 F.2d 10, 11 (1st Cir. 1987) (stating that "dismissal by the court for punitive or other reasons, even though labeled (sic) 'without prejudice,' is, in fact, with prejudice if the statute of limitations has run," noting that "any other result . . . would be most unfair.").

Faced in López-González with the question of applying these tolling principles to a federal § 1983 action governed by

Puerto Rico's statute of limitations law,[5] we held that we "[could not] say for sure whether similar considerations would lead a Puerto Rico court" to follow the common law rule and "make an exception . . . to its civil law restart tolling principle," in the event dismissal was imposed as a sanction. 404 F.3d at 554. Nevertheless, we noted that in Durán-Cepeda the Puerto Rico Supreme Court had suggested a possible exception to the restart rule "'[f]or cases where the [tolling] rule is abused or used in bad faith.'" Id. (quoting Durán-Cepeda, 12 P.R. Offic. Trans. at 785 n.1); see also, Silva-Wiscovich, 19 P.R. Offic. Trans. at 601 (citing same footnote in Durán-Cepeda). We concluded that "[w]hatever the correct reading of Puerto Rico's law," given the plaintiff's "flagrant and abusive delay," the application of Puerto Rico's restart tolling principle to that case, would be inconsistent with "federal policies underlying 42 U.S.C. § 1983." Id. Thus we declined to apply Puerto Rico's restart rule to the dismissed action. López-González, 404 F.3d at 554-55.

Applying the principles of López-González to the case before us, we are cognizant of the possibility that the judgment dismissing Rodríguez's 2004 Action, though labeled "without

---

[5] Federal law under § 1983 borrows a state's coordinate rules on tolling unless they are inconsistent with the federal Constitution and law, or with the federal policy underlying § 1983. Rodríguez-García, 354 F.3d at 97. While Puerto Rico is not a state, our court has treated Puerto Rico as if it were a state for purposes of the application of this rule. See, e.g., id.

-13-

prejudice," may have been intended as a sanction for Rodríguez unjustifiably delaying service of process upon Suzuki. In that case it would seem hardly equitable to reward Rodríguez for his lack of due diligence by granting him another year within which to file his claim. Nevertheless, the instant action, unlike the § 1983 claim in López-González is purely a question of Puerto Rico tort law. Moreover, the district court was not explicit as to whether dismissal was intended as a sanction or as to whether Rodríguez, in fact, acted in bad faith. Under these circumstances, we feel that we are bound to adhere to the usual rule and apply Puerto Rico's restart rule to the involuntary dismissal without prejudice of Rodríguez's 2004 Action. Thus, provided that the tolling effect extends to Rodríguez's suit against Suzuki, the 2006 Action, filed within one year of the dismissal of the 2004 Action, will be considered timely.

### D. Identicality and Solidarity

Suzuki argues that whatever tolling effect the filing of the 2002 Action may have had, it does not save the instant action against Suzuki, because this action is not "identical" to the 2002 Action. Suzuki is correct that § 5303 does not toll the statute of limitations "'for all claims arising out of the same facts.'" Rodríguez-García, 354 F.3d at 97 (quoting Fernández v. Chardón, 681 F.2d 42, 49 (1st Cir. 1982)). Rather, instituting an action before the courts pursuant to § 5303 only tolls the statute of limitations

-14-

with respect to "identical" subsequent actions. See id. (citing Cintrón v. Estado Libre Asociado de P.R., 27 P.R. Offic. Trans. 582 (1990)); see also Del Valle v. Vornado Realty Trust, 515 F. Supp. 2d 222, 226 (D.P.R. 2007) (explaining that "in order for a prior judicial action to toll the statute of limitations as to a later filed complaint, it is necessary that the second complaint assert a cause of action identical to the one asserted in the first action"). This rule is known as the "identicality requirement." Rodríguez-García, 354 F.3d at 97. We have held that, in order to be "identical" under § 5303, the claims asserted in the subsequent action (1) "must seek the same form of relief" as the first action; (2) "must be based on the same substantive claims"; and (3) "provided that other Puerto Rico tolling statutes do not rescue the claims on other grounds . . . must be asserted against the same defendants in the same capacities; new defendants should not be added." Id. at 98. This "identicality requirement" serves to "prevent[] plaintiffs from circumventing the notice function of the statute of limitations by asserting different claims in belated federal court complaints." Id. at 97.

Suzuki relies on the identicality requirement to argue, as the district court held, that the 2002 Action did not toll or reset the statute of limitations as it pertains to the claims against Suzuki because there was no "identicality" of parties between the 2002 Action and the subsequent suits. Specifically,

-15-

Suzuki argues that because Rodríguez never sued Suzuki in the 2002 Action and never sued Rainbow or Panorama in the 2004 Action, the 2004 Action was not "identical" to the 2002 Action, and therefore the 2002 Action did not toll the statute of limitations with respect to Suzuki. Because the 2004 Action was untimely, Suzuki reasons, it could not serve to toll the statute of limitations with respect to the instant action against Suzuki, which was not filed until 2006, and therefore, this action was properly dismissed. We disagree. As noted above, "identicality" has been read to include, inter alia, a requirement that for a prior suit to have a tolling effect upon a subsequent suit, it must be asserted against the same defendants, but only "provided that other Puerto Rico tolling statutes do not rescue the claims on other grounds." Rodríguez-García, 354 F.3d at 98 (emphasis added). In this case, we find that another provision of Puerto Rico law known as the "solidarity doctrine" rescues this claim.

The solidarity doctrine, rooted in Article 1874 of the Puerto Rico Civil Code "is based on the theory that there is one obligation, shared by several debtors." Tokyo Marine, 142 F.3d at 6.[6] In such situations, "the interruption of prescription against

---

[6] The concept of "solidary liability" or "obligación solidaria," which is the original term in Spanish, "is a term of art which is similar to, but not strictly synonymous with 'joint and several liability.'" Tokyo Marine, 142 F.3d at 4 n.1. "The essential feature of solidarity is that the solidary debtors are jointly responsible for the same obligation." Id. at 5 (citing Puerto Rico cases).

-16-

one defendant also interrupts the prescription of claims against any other defendants who are solidarily liable with the first." Tokyo Marine, 142 F.3d at 4 (citing P.R. Laws Ann. tit. 31, § 5304 and Arroyo v. Hosp. La Concepción, 130 P.R. Dec. 596, 606 (P.R. June 5, 1992)); see also P.R. Laws Ann. tit. 31, § 5304 ("Interruption of prescription of actions in joint obligations equally benefits or injures all the creditors or debtors."). Thus, in situations where various defendants are held to be "solidarily liable" with each other, this doctrine has been interpreted to allow for the "timely inclusion of a solidary tortfeasor not originally included in an action." See Arroyo, 130 P.R. Dec. at 607-08 (quoting official translation). The theory is that "[t]he interruption of the prescription of the cause of action based on [a] unitary obligation . . . need only be performed once." Tokyo Marine, 142 F.3d at 6. Relying on the solidarity doctrine, Rodríguez argues that Suzuki, the manufacturer of the motorcycle, is solidarily liable with Rainbow, the retailer, and Panorama, the distributor, and that therefore, by filing the 2002 action against Rainbow and Panorama, Rodríguez "tolled the statute of limitations against all joint tortfeasors including [Suzuki]."

The threshold question is whether there is in fact solidarity between Rainbow or Panorama and Suzuki such that the interruption of the statute of limitations as to the former prejudiced the latter. Solidarity exists under Puerto Rico law

"when several people take part or cooperate in causing a wrong." Arroyo, 130 P.R. Dec. at 604. The Puerto Rico Supreme Court has held that "joint tortfeasors are solidarily liable." Tokyo Marine, 142 F.3d at 6 (citing Arroyo, 130 P.R. Dec. at 603); see also id. at 6-7 ("[A]rticle 1874 of the Civil Code applies to joint tortfeasors, so that the timely filing of a suit against one joint tortfeasor had interrupted the prescription of the suit against the other tortfeasors."). "Under article 1802, when the negligent acts of more than one person have adequately caused a harm, each such person is a joint tortfeasor who is liable in full to the plaintiff for the harm caused." Id. at 6. The district court found it "clear" that solidarity exists in this case between Panorama, Rainbow and Suzuki. We agree. As the district court explained:

> Plaintiff alleges that [Suzuki], Rainbow and Panorama sold a motorcycle that was amongst other things, negligently designed, tested, assembled, packaged, marketed, advertised and sold. Based on these allegations, Plaintiff seeks compensation for pain and suffering, as well as the cost of the Motorcycle. Since [Suzuki] was the manufacturer of the Motorcycle, and Plaintiff's claim is one for product liability, it is clear that solidarity amongst the defendants exists.

Rodríguez, at *8-9. The district court's finding of solidarity is further bolstered by Puerto Rico's adherence to the theory of strict tort liability in cases involving products liability. Aponte-Rivera v. Sears Roebuck de P.R., Inc., 144 P.R. Dec. 830, 838-39 (1998) (official translation); see also Del Rosario-Ortega

-18-

v. <u>Star-Kist Caribe, Inc.</u>, 130 F. Supp. 2d 277, 284 (D.P.R. 2001) (noting that "[in] a cause of action in products liability, . . . as a matter of public policy, each and every entity involved in the chain of distribution is strictly liable to the consumer") (citing <u>Ferrer-Delgado</u> v. <u>Gen. Motors Corp.</u>, 100 P.R. Dec. 246, 257-58 (1971), <u>rev'd on other grounds sub nom.</u> <u>Exxon Mobil Corp.</u> v. <u>Allapattah Servs.</u>, 545 U.S. 546 (2005)). Thus, under Puerto Rico law, "all those who take part in the manufacturing and distribution chain of a product are solidarily liable, along with the manufacturer, to the injured party." <u>Aponte-Rivera</u>, 144 P.R. Dec. at 838 n.6.

Concluding that Panorama, Rainbow and Suzuki are in fact solidarily liable, we must now address Rodríguez's argument that his 2002 Action, filed against parties solidarily liable with Suzuki, effectively tolled the statute as to his subsequent actions against Suzuki. Though no single case is entirely controlling, this argument has substantial support in the case law. For example, in <u>Tokyo Marine</u>, plaintiff, the subrogee for an imported automobile dealer (Mitsubishi), brought a tort action under Article 1802 of the Puerto Rico Civil Code against Pérez y Cía., the owner of a storage facility where plaintiff's automobiles were stored, for property damage to Mitsubishi's vehicles resulting from their storage in Pérez y Cía.'s facility. <u>See</u> 142 F.3d at 2-3. The cause of action, which was filed more than one year after it had

-19-

accrued, had been dismissed by the district court on grounds that it was barred by the applicable statute of limitations. Id. at 3. The issue before us was "whether the plaintiff interposed an 'extrajudicial claim' . . . that successfully interrupted the prescription of the cause of action before the original one-year term expired." Id. at 4. We held that it did. Id. at 4-5. We reasoned that Tokyo Marine effectively tolled the statute of limitations pursuant to Article 1873 by filing, within the limitations period, an extrajudicial claim letter against Pérez y Cía.'s liability insurer, UAC. Id. We further reasoned that because Pérez y Cía. was solidarily liable with its insurer, under Article 1874, "the timely interruption of prescription as to UAC had a like effect as to its insured." Id. at 10. Thus, we reversed the district court's conclusion that the challenged claim was time barred, and amended the judgment accordingly. Id. at 10-11.

A similar result was reached by the Puerto Rico Supreme Court in Sánchez Montalvo, 153 P.R. Dec. 559. In that case, the plaintiff, who was injured in an airport terminal, filed an extrajudicial claim letter against the Port Authority on the day of the accident. Id. at 562-63. No extrajudicial letter or other tolling mechanism, however, was timely filed against American Airlines, which controlled the area where the accident took place, even though plaintiff was on notice that American could be liable.

Id. at 572-73. Two years later plaintiff filed an action under article 1802 against the Port Authority and American Airlines. Id. The trial court dismissed the action against American as time-barred, reasoning that plaintiff failed to interrupt the statute of limitations as to American. Id. at 574. Nevertheless, the Puerto Rico Supreme Court reversed the dismissal. Id. The supreme court held that "[t]he cause of action in regards to [the Port Authority] not being time barred, and joint liability between [the Port Authority] and American having been alleged, the interruption of the prescriptive term with regards to [the Port Authority] interrupted the term equally for American." Id. (citing Martínez-Díaz v. E.L.A., 132 P.R. Dec. 200 (1992); see also García-Colón v. García-Rinaldi, 340 F. Supp. 2d 113, 126 (D.P.R. 2004) (holding that by sending extrajudicial claim letter to one physician, malpractice plaintiff effectively tolled the statute of limitations as to the other joint tortfeasors including another physician and the hospital, thereby rendering suit against the others, outside the one-year limitations period, timely).

Suzuki acknowledges that these cases support the proposition that "the filing of an extrajudicial claim letter toll[s] the running of the statute of limitations, even against those parties to whom a tolling letter had not been sent," but attempts to distinguish them on the ground that Rodríguez did not file an extrajudicial claim, but rather, instituted a judicial

-21-

action.  We find this distinction unpersuasive.  As noted above, Article 1873 provides three mechanisms which can be employed to toll the statute of limitations, and these include, inter alia, filing an "extrajudicial claim" and "instituti[ng] [an action] before the courts."  P.R. Laws Ann. tit. 31, § 5303.  Neither the statute nor the case law provide a basis for differentiating among these mechanisms with respect to the consequences of solidarity upon their operation, nor does Suzuki provide us such a basis.  In fact, the case law suggests the contrary.  For example, in Tokyo Marine, when discussing the § 5303 tolling mechanism in the context of the solidarity doctrine, we stated as follows:

> [T]he interruption of prescription against one defendant also tolls the statute against any other defendants who are solidarily liable with the first.  Regardless of the method used, when the prescriptive period is successfully interrupted, the full period begins to run again.

142 F.3d at 4 (emphasis added and footnote and citation omitted). Although in Tokyo Marine the statute of limitations was tolled via the filing of an extrajudicial claim letter, we stated that the result would be no different in the event of a prior suit tolling the statute of limitations for a subsequent suit.  See id. at 7 (noting that "the interruption of prescription as to one solidary debtor affects the other solidary debtors, so that a suit against one joint tortfeasor may be filed up to one year after judgment is entered in a suit against another joint tortfeasor" (citation

-22-

omitted)); see also García-Pérez, 2008 WL 2717833, at *7 (noting that filing a judicial or extrajudicial claim against a tortfeasor interrupts the prescription period in question as to the rest of the solidary tortfeasors).  This reading is also the one most consistent with other provisions of Puerto Rico law, including Article 1097 of the Civil Code, which provides that "[a] creditor may sue any of the joint debtors or all of them simultaneously" and that "[t]he actions instituted against one shall not be an obstacle for those that may be brought subsequently against the others, as long as it does not appear that the debt has been collected in full." P.R. Laws Ann. tit. 31, § 3108 (emphasis added).

Moreover, there are other cases on point in which the timely filing of a judicial action has been found to toll the statute of limitations as to new defendants who are solidarily liable with those against whom the action was initially filed.  For example, in García-Molina v. Gobierno de la Capital, the plaintiff sued the Municipality of San Juan and its insurer for injuries sustained in a car accident while plaintiff was a passenger, but failed to sue either the owner or the driver of the vehicle.  72 P.R. Dec. 138, 141 (1951) (official translation); see also Hernández-Moreno v. Serrano-Marrero, 719 F. Supp. 70 (D.P.R. 1989) (discussing García-Molina). Codefendants, the municipality and its insurer, then moved to file a third-party complaint against the owner of the vehicle outside the limitations period.  García-

-23-

Molina, 72 P.R. Dec. at 141-42. Addressing the timeliness issue, the Puerto Rico Supreme Court noted, citing sections 1094 and 1874 of the Civil Code, that "actions instituted against any one of the joint debtors shall prejudice all of them" and that "[i]nterruption of prescription of actions in joint obligations equally benefits or injures all the creditors or debtors." Id. at 148. Applying the solidarity doctrine, the Puerto Rico Supreme Court thus concluded that "[t]he original complaint against the third-party plaintiffs [the municipality and its insurer] having been filed within one year," "prescription against the third-party defendants [the owner and driver of the vehicle] had been interrupted and the third-party complaint was therefore timely filed." Id. at 148-49.

Similarly, in Torres-Vázquez v. Commercial Union Ins. Co., longshoreman brought a tort action under Puerto Rico law against a marine terminal, but did not file a complaint against the marine terminal's liability insurer until four years after the incident. 367 F. Supp. 2d 231, 234-35 (D.P.R. 2005). The insurer sought to dismiss the complaint as barred by the applicable one-year statute of limitations, but the district court denied the motion. Id. at 239-40. The court, relying on our interpretation of Puerto Rico law in Tokyo Marine, held that because the original complaint against the marine terminal had been filed in a timely fashion, "there is no doubt that the statute of limitations for all tortfeasors jointly liable, as is [the insurer], was stalled for

-24-

the interruption against one tortfeasor benefits all others." 367 F. Supp. 2d at 240. Thus, the amended complaint adding the marine terminal's insurer as a defendant four years after the incident was held to be timely. Id.

Suzuki attempts to distinguish this line of cases on the ground that in these cases the plaintiffs took advantage of the tolling effect of the previously filed judicial complaint to file a complaint against additional solidarily liable tortfeasors in the same action rather than in a subsequent suit. In contrast, Rodríguez seeks to rely on the tolling effect of the 2002 Action in a subsequent action against the alleged joint tortfeasor. However, we see no basis for regarding this distinction as dispositive. If initiating a judicial action against a tortfeasor tolls the statute of limitations as to all other tortfeasors jointly and severally liable with the first, as the solidarity doctrine provides, and that action is dismissed without prejudice thereby permitting its re-institution before the courts, there is no basis for concluding that the tolling effect of the initial action somehow ceases as a result of the dismissal, especially given that Puerto Rico provides for the reset of the statute of limitations upon dismissal.

To be sure, we are not holding that identicality is inapplicable when tolling the statute of limitations in suits involving solidarily liable tortfeasors. Rather, for a prior judicial or extra-judicial claim to toll the limitations period for

-25-

a later-filed suit against a solidary tortfeasor, the later suit must nevertheless contain the same substantive claims and seek the same relief. As we stated in Rodríguez-Narvaez, "tolling the statute as to one jointly and severally liable defendant tolls it as to all, but the tolling is effective with regard only to identical causes of action." 895 F.2d at 43 (citation omitted). In this case, we conclude that the causes of action stated in the 2002, 2004 and 2006 Actions were identical, in that each was a products liability action seeking damages resulting from the same alleged defects in Rodríguez's Suzuki motorcycle.

The requirement of identicality of parties, however, cannot apply where the parties against whom the statute of limitations was tolled and those parties ultimately sued are solidarily liable for the same obligation. We find this interpretation to be the clearest way of reconciling the identicality requirement with the solidarity doctrine as those concepts are applied in Puerto Rico law. To hold otherwise and allow the identicality requirement to preclude additional defendants from being later sued, where the prescription period has been effectively tolled against other defendants solidarily liable with those defendants, would directly violate the principle that the "interruption of prescription of actions in joint obligations equally benefits or injures all the creditors or debtors." See P.R. Laws Ann. tit. 31, § 5304. In other words, mandating

-26-

"identicality of parties" between a prior and subsequent suit as a prerequisite to tolling, where the solidarity doctrine allows a prior suit against one solidary tortfeasor to toll the statute of limitations with respect to a subsequent lawsuit against other tortfeasors solidarily liable with the first, would render the solidarity doctrine meaningless.

Thus we read the solidarity doctrine as requiring that, with respect to identical causes of action, the filing of a judicial action against one solidarily liable defendant tolls the statute as to all defendants solidarily liable with the first. This is the case regardless of whether the later-sued tortfeasors are brought into the initial action that created the tolling effect or they are sued in a subsequent action. These principles compel a result in Rodríguez's favor.

Accordingly, we conclude that Rodríguez effectively tolled the statute of limitations as to his later-filed actions against Suzuki, pursuant to sections 5303 and 5304 of title 31 of the Puerto Rico Civil Code, by timely bringing before the court an identical cause of action against parties solidarily liable with Suzuki. The instant action having been filed within the limitations period, which reset after the dismissal of those prior actions, the district court erred in holding Rodríguez's claims to be time-barred.

### III.  <u>Conclusion</u>

For the foregoing reasons, the summary judgment entered in favor of Suzuki and against Rodríguez is **<u>reversed</u>**.

Costs are granted to appellant.